## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

ASSASSINATION ARCHIVES    *
AND RESEARCH CENTER, INC.,    *
   *
     Appellant,    *
   *
     v.    *    Case No. 23-5004
   *
DEPARTMENT OF JUSTICE,    *
   *
     Appellee.    *
   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## APPELLANT'S MOTION FOR PARTIAL SUMMARY REVERSAL

Appellant Assassination Archives and Research Center, Inc. ("AARC") respectfully requests that the Court summarily reverse the portions of the District Court's orders of 6 August 2019, 16 March 2020, 14 February 2022, 30 September 2022, and 8 November 2022 discussed herein on the grounds that AARC's position is clearly right as a matter of law.

AARC candidly concedes that some aspects of this case are not appropriate for summary disposition, and so this Motion should not be construed as a motion for full summary reversal. Rather, AARC has identified the "low hanging fruit" of the District Court's orders: 3-4 issues[1] about which there can be no substantial

---

[1] The final issue can reasonably be alternatively described as two related issues, as demonstrated below.

question. AARC respectfully requests that this Court summarily reverse the

District Court's order on these issues and remand the case to the District Court

with orders to address the deficiencies. Additionally, because these deficiencies

will have an undisputed hydraulic effect on the other issues in controversy, this

Court should vacate the District Court's three 2022 orders in their entirety and

leave it to the District Court, once it has made the appropriate findings of fact and

law, to decide whether it will maintain or change the final disposition of the issues

in controversy.

## FACTUAL BACKGROUND

*The FOIA Requests and Initial Responses:*

1.      In July 2009, a declaration filed by the Federal Bureau of

Investigation ("FBI") in the case *Lardner v. FBI*, No. 03-874 (D.D.C.), revealed

the existence of seven boxes of indices of pre-1960 electronic surveillance

activities ("ELSUR indices"). Dkt. #45-1 at 29.[2]

2.      In October 2009, AARC submitted to FBI a Freedom of Information

Act ("FOIA") request for the ELSUR indices ("the 1st Request"). *Id.* at 24-25.

3.      In November 2009, FBI informed AARC that it had identified

approximately 18,000 pages of potentially responsive records. *Id.* at 39. In

---

[2] Citations to the District Court record follow the pagination assigned by the
CM/ECF system.

February 2011, FBI clarified that approximately 5,000 pages of the identified records were dated after 1960. *Id.* at 42. Due to a dispute over fees, FBI closed the 1st Request in 2011. Dkt. #1 ¶ 13.

4.      In September 2012, AARC submitted another FOIA request to FBI. This request asked for the ELSUR indices, regardless of whether they related to pre- or post-1960 surveillance, as well as "all tapes, transcripts, logs and other materials related to said surveillance, including surveillance applications, affidavits, testimony, authorizations and warrants" ("the 2d Request"). Dkt. #45-1 at 45-46. AARC requested a public interest fee waiver. *Id.* at 46. This FOIA request is the subject of Count 1 of the Complaint. Dkt. #1 ¶¶ 16-24.

5.      In April 2013, after learning that FBI refused to accept delivery of the 2d Request, AARC wrote to FBI to complain about the matter. Dkt. #45-1 at 44. FBI failed to respond to this correspondence as well until after the instant case was filed in 2018, at which point it began processing part of the 2d Request. *Id.* at 48.

6.      In September 2018, FBI denied AARC's request for a public interest fee waiver, agreed to start processing the ELSUR indices, and claimed that the second part of the 2d Request "is not a proper request as it is too vague and would require an unduly burdensome search demanding extensive FBI resources." *Id.* at 48-49.

7.     In February 2019, FBI issued its first release of ELSUR indices and informed AARC that it would be charged $25 for the first two CDs and $15 for each additional CD. *Id.* at 58.

8.     Later in February 2019, FBI informed AARC that it would be responsible for paying $15 within thirty days of each release or else FBI "will close any pending FBI FOIPA requests from you" and "cause an automatic denial of any future FOIPA requests." *Id.* at 62.

9.     In October 2017, AARC also submitted two FOIA requests to FBI requesting information about the processing of the 1st Request and the refusal to accept the 2d Request. *Id.* at 165, 171. These FOIA requests are the subject of Counts 2 and 3 of the Complaint. Dkt. #1 ¶¶ 25-41.

10.     FBI failed to substantively respond to these two requests until after the instant case was filed in 2018, at which point it released some redacted pages and claimed that its response was complete. Dkt. #45-1 at 52-54.

*AARC's First Attempts to Resolve the Fee and Processing Rate Issues:*

11.     In June 2019, after unsuccessfully attempting to reach an agreement with FBI, AARC first asked the District Court to intercede to resolve three preliminary issues in the case. AARC argued that FBI should have to file a motion for partial summary judgment justifying the reasonableness of its fee assessment and its denial of AARC's request for a public interest fee waiver before it could

continue to assess monthly fees. Dkt. #17 at 2-4. AARC argued that FOIA placed the initial burden of proof on the agency to justify its actions, and that the District Court could not properly require AARC to seek partial summary judgment on these matters first when FBI had not yet provided any declarations or other evidence supporting its position that its determinations were proper. *Id.* at 2-3. FBI argued that the Court should not require it to justify its determinations first and should allow it to continue charging fees until AARC filed a motion for partial summary judgment. *Id.* at 5.

12.     AARC also argued that the fact that FBI's 500-pages-per-CD processing rate delayed the resolution of the case by several years meant that FBI should be required to file a formal motion for a stay which satisfied the requirements established by this Court in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). *Id.* at 3-4. FBI simply argued that it was "prepared to defend this processing rate as it impacts the resources of the FBI and its ability to adequately respond to a large number of requesters." *Id.* at 5.

13.     In August 2019, the District Court held a status conference regarding the issues AARC had raised. In that conference, FBI confirmed that its "only contention when we were discussing [the two fee issues] . . . is who would actually

initiate briefing." Dkt. #20 at 5:12-14. The District Court "direct[ed] the plaintiffs to file first and on both issues." *Id.* at 6:25-7:1.

14.    AARC also proposed suspending the monthly charges until FBI had completed its production, at which time FBI could file a motion for summary judgment on the fee issues and AARC could pay any assessed fees if the District Court granted that motion. *Id.* at 7:15-25. FBI refused, taking the position that AARC "ha[s] to pay every month in order for FBI to produce." *Id.* at 8:7-8. The District Court declined to issue such an order without a formal motion for partial summary judgment. *Id.* at 8:11-17.

15.    The District Court also stated that, in its opinion, a formal motion for an *Open America* stay was not necessary "given that there is an ongoing production." *Id.* at 13:14-15. It stated that AARC could file a motion to compel FBI to seek an *Open America* stay at the same time as its motion for partial summary judgment and that the parties could then argue the question of what standard of review should apply, but that it currently favored "setting production scheduled based on various factors, not so much kind of a clear legal standard, as more just trying to supervise the docket and then needs for certain production amount change over time." *Id*. at 14:1-5 (cleaned up).

*Briefing Delays and the COVID-19 Pandemic:*

16.     In this conference, the parties and the District Court agreed that

AARC would file its motion for partial summary judgment and motion to compel

by 13 September 2019. *Id.* at 8:22-24.

17.     On 9 September 2019, AARC filed an unopposed motion requesting a

six-month extension of this filing deadline, until 13 March 2020, advising the

District Court that AARC's President had recently undergone heart surgery and

was under medical orders not to work for an indefinite period of time, including

providing information and assistance in this case. Dkt. #21 at 1-2.

18.     On 10 September 2019, the District Court issued a Minute Order

granting AARC's motion in part, ordering that AARC's motions must be filed by

10 March 2020.

19.     On 9 March 2020, AARC filed an unopposed motion requesting that

this filing deadline be extended by fifteen weeks, until 24 June 2020, advising the

District Court that in the intervening time the undersigned had learned that his wife

was pregnant and that the baby would be due to arrive on 17 April 2020 in the

middle of the briefing schedule, which would make adhering to the schedule

impossible. Dkt. #22 at 1. In this motion, AARC explained that the undersigned

had not been able to comply with the District Court's standing order requiring that

scheduling motions must be filed at least four business days before an affected

deadline, Dkt. #3 at 3, because of a catastrophic computer failure. Dkt. #22 at 2.

20.     On 11 March 2020, the District Court issued a Minute Order granting

AARC's motion in part, ordering that AARC's motions must be filed by 31 March

2020. The Minute Order stated that "[f]urther requests for extension shall be

disfavored."

21.     On 13 March 2020, President Donald Trump issued a proclamation

declaring that the COVID-19 outbreak constituted a national emergency. This and

similar measures resulted in the immediate closure of most businesses and agencies

in the Washington, DC metropolitan area, including the child care facility attended

by the undersigned's older daughter.

22.     On 14 March 2020, the U.S. House of Representatives passed H.R.

6201, the Families First Coronavirus Response Act. This soon-to-be-passed law

required, *inter alia*, that employers must provide two weeks of paid sick leave to

any employee if "[t]he employee is caring for a son or daughter of such employee

if the school or place of care of the son or daughter has been closed, or the child

care provider of such son or daughter is unavailable, due to COVID-19

precautions." 29 U.S.C. § 2601 note.

23.     On 16 March 2020, AARC filed an unopposed renewed motion again

requesting that this filing deadline be extended by fifteen weeks, until 24 June

2020. AARC cited the coronavirus outbreak as extraordinary circumstances and specifically cited H.R. 6201's requirement that the undersigned's firm must provide him with two weeks of sick leave because of the closure of his daughter's child care facility.

24.     Also on 16 March 2020, Chief Judge Beryl Howell issued Standing Order No. 20-9, which restricted District Court operations, citing among many factors the President's proclamation and "the closing of all area school districts for at least two weeks, which impinges on the availability of courthouse staff, jurors, and counsel." Standing Order No. 20-9 at 1-2, *available at* https://www.dcd.uscourts.gov/sites/dcd/files/Court%20Operations%20Standing%20Order%2020-9.pdf (last accessed April 7, 2023).

25.     On 16 March 2020, the District Court issued a Minute Order denying AARC's motion, stating, "The Plaintiff has known of its summary judgment briefing deadline since August 6, 2019. Notwithstanding the national emergency surrounding the coronavirus, the Plaintiff has not shown good cause why its briefing deadline should be extended yet again." (Dkt. #1985367 at 3.)

26.     On 31 March 2020, AARC notified the District Court that it would not be filing the planned motions because doing so would require the undersigned's law firm to violate the Families First Coronavirus Response Act and the Family and Medical Leave Act. Dkt. #24 at 1. AARC advised the District

Court that it would wait until FBI filed a motion for summary judgment on the fee issues at the end of its processing of the request at issue in Count 1 and then oppose that motion. Dkt. #24 at 2. AARC also advised the District Court that it would indefinitely delay briefing matters related to FBI's processing rate because "the unexpected and extreme nature of the coronavirus emergency calls for at least a temporary cease-fire in this particular battle." *Id.* at 3. AARC advised the District Court that "[o]nce the coronavirus emergency has passed and FBI has taken steps to cope with the surge in its backlog, Plaintiff will reassess the situation and, if necessary, move at that time to accelerate FBI's processing of responsive records." *Id.*

*Renewed Briefing and Summary Dismissal:*

27.    At a status conference in October 2021, AARC informed the District Court that the unexpected duration of the coronavirus emergency and the slow rate of FBI's processing left it no choice but to again attempt to file the motions that it had previously planned to file in 2019. The parties and the District Court agreed that AARC would file its motions on 12 November 2021. *See* Dkt. #39 at 1.

28.    In October 2021, AARC ceased making monthly payments to FBI.

29.    On 11 November 2021, AARC filed a consent motion requesting that its filing deadline be extended by eleven days, until 23 November 2021, advising the District Court that the undersigned's schedule had been disrupted by the

accelerated briefing schedule ordered by Judge Chutkan in another case in which

he represented a group of legal scholars. AARC apologized for not filing this

motion more than four days in advance of the deadline, explaining that the

undersigned "was attempting to meet the Court's original deadline and only just

determined that it would not be possible to do so." *Id.* at 1-2.

30.     On 12 November 2021, the District Court issued a Minute Order

granting AARC's motion. The Minute Order stated that "[f]uture extension

requests will be disfavored."

31.     On 23 November 2021, AARC filed its motion for partial summary

judgment on the fee issues, accompanied by a ten-page memorandum of law. Dkt.

#40 at 3-12. It also filed a contemporaneous eight-page motion to compel FBI to

seek an *Open America* stay. Dkt. #41.

32.     On 20 December 2021, FBI filed an opposed motion requesting that

its 23 December 2021 deadline be extended by over a month until 28 January

2022.[3] FBI argued that "good cause simply means a valid reason for delay" and

gave the following four reasons for its extension: "(1) undersigned and agency

counsel need additional time to research the issue and allegations in Plaintiff's

motions and confer with the supervising attorneys about potential defenses; (2) the

---

[3] Unlike with previous extension motions, AARC opposed this motion because
FBI maintained that it would be required to pay fees during the briefing period,
even when that period was extended at FBI's request.

designated declarant needs additional time to prepare and complete the supporting declaration; (3) Defendant needs additional time to request, receive, and review the transcript of the Court's oral ruling on August 6, 2019, in which the Court heard and denied Plaintiff's oral motion to compel the Government to move for an Open America stay; and (4) Defendant requests additional time to prepare an appropriate response to Plaintiff's motions." Dkt. #42 at 2.

33.    On 21 December 2021, the District Court issued a Minute Order granting FBI's motion in part, ordering that FBI's opposition briefs must be filed by 14 January 2022. The Minute Order stated that "[f]uture extension requests will be disfavored."

34.    In December 2021, FBI stopped making monthly releases.

35.    On 14 January 2022, FBI filed an unopposed motion requesting that its deadline be extended by another seven days, advising the District Court that "this morning undersigned counsel was informed by agency counsel that her supervisor needs additional time to review the proposed declaration." Dkt. #44 at 2. After conferring with the undersigned, FBI also requested that AARC's reply be due on 25 February 2022. *Id.* at 3.

36.    On 14 January 2022, the District Court issued a Minute Order granting FBI's motion in part, granting FBI's request for seven additional days for

its brief but ordering that AARC's reply briefs must be filed by 11 February 2022. The Minute Order did not state anything about future extension requests.

37.    On 11 February 2022, AARC filed a consent motion requesting that its deadline be extended by five days, advising the District Court that the undersigned had been ordered by another district judge to be ready for a jury trial at the end of February and had been similarly ordered to file a joint pretrial statement that day, and that the Government did not return the marked-up draft until that evening. Dkt. #46 at 1. The undersigned further explained that he did not request the extension earlier because he did not know if he would need it, because he only anticipated needing less than a day to complete the briefs. *Id.* at 1-2.

38.    On 14 February 2022, the District Court denied AARC's extension motion. After reciting a history of AARC's—but not FBI's—extension requests, the District Court stated, "Enough is enough. A plaintiff must prosecute its case. And it must abide by the Court's instructions. The Center has done neither." Dkt. #47 at 2-3.

39.    In addition to denying AARC's extension motion, the District Court also denied AARC's motion for partial summary judgment and its motion to compel FBI to seek an *Open America* stay, citing as the sole basis that "the Center has repeatedly violated the Court's standing order and its warnings that future requests for an extension would be disfavored." *Id.* at 3. The District Court further

ordered, "The Center shall either pay the Government within 30 days, or the Government may suggest a briefing schedule on the issue of whether production is complete given that the Center is refusing to pay processing fees." *Id.*

40.    The District Court's 14 February 2022 Order did not include a discussion of *any* of the arguments made in either of AARC's motions.

*Final Briefing and Final Dismissal:*

41.    On 18 March 2022, FBI advised the District Court that AARC had not paid the fees that it was contesting. Dkt. #48 at 1. It accordingly proposed a briefing schedule for a motion for summary judgment. *Id.*

42.    On 18 April 2022, FBI filed a motion for partial summary judgment, arguing that its responses to the FOIA requests at issue in this case were complete because AARC had stopped paying the monthly fees associated with the 2d Request. Dkt. #49 at 16.

43.    FBI did not argue that any of its searches were adequate, that any of its withholdings were proper, or that the second part of the 2d Request was an improper FOIA request.

44.    On 18 May 2022, AARC filed its opposition to FBI's motion, which was in fact the motion supported by a sworn declaration that it had asked the District Court to make FBI file in June 2019. AARC argued extensively that FBI had failed to demonstrate that the fees it assessed were reasonable and that, even if

they were, FBI had improperly denied AARC a public interest fee waiver. Dkt. #50 at 3-12.

45.    On 30 September 2022, the District Court granted FBI's motion on the sole grounds that AARC had not paid the assessed fees. Dkt. #52 at 3.

46.    The District Court's 30 September 2022 Order did not include a discussion of *any* of the arguments made in AARC's opposition.

47.    The District Court further ordered AARC to pay FBI the outstanding $52.50 balance within two weeks of the decision and stated that failure to do so would lead to "the Court dismiss[ing] the action." *Id.*

48.    On 24 October 2022, FBI advised the District Court that AARC had not paid the fees that it was contesting. Dkt. #53 at 5. It accordingly asked the District Court to dismiss the case in its entirety pursuant to Federal Rule of Civil Procedure 41(b). *Id.* at 5. FBI argued that dismissing the entire case, including all of the search and withholding issues in controversy related to the releases already made, because AARC had not paid $52.50 in monthly payments was "necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the courts." *Id.* (quotations and citation omitted). FBI made this argument without ever explaining why its own lethargic processing rate, its stubborn refusal to file a motion justifying its fee determinations, or its complete halting of all processing—did not cause "undue delays in the disposition of

pending cases and . . . congestion in the courts." FBI also made this argument

without ever, in the entire history of the case, filing a single piece of evidence to

support its processing of AARC's requests which did not pertain to either its $15-

per-CD fee or its 500-pages-per-month processing rate.

49.    On 8 November 2022, the District Court granted FBI's motion, citing

Rule 41(b) and AARC's failure to pay the fees it continued to contest. Dkt. #54 at

1. The District Court dismissed this case in its entirety for failure to pay fees that it

never actually held were properly assessed.

50.    On 7 January 2023, AARC appealed the District Court's orders. Dkt.

#55 at 1.

## ARGUMENT

Summary reversal is appropriate where the merits of the parties' positions

are so clear as to warrant summary action. *Taxpayers Watchdog, Inc. v. Stanley*,

819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). That is true here with respect to

the issues discussed herein.

Despite the apparent complexity of the factual background recited above, the

legal issues in play are the basic building blocks of civil litigation. Cases must be

decided on the merits except in extraordinary circumstances. Parties which do not

bear the burden of proof cannot be required to seek summary judgment. A court

cannot grant a motion for summary judgment without explaining why there is no

genuine issue of material fact. A court's discretion in scheduling matters is not limitless. And most critically, sanctions must be proportional to the alleged misconduct. At one point or another, the District Court failed to follow each of these core precepts, and as a result, the Court should grant AARC's motion and put this case back on track.

For ease of reference, the following discussion is organized in roughly chronological order according to the decision in question.

## I.    AGENCIES MUST SEEK SUMMARY JUDGMENT FIRST IN FOIA FEE ASSESSMENT CASES

It is undisputed that most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). These motions are required to be brought by the Government because "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (quotations omitted). This has been the case since FOIA was first enacted. *See* S. Rep. No. 813, 89th Cong., 1st Sess., 8 (1965) ("Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it"); H. R. Rep. No. 1497, 89th Cong., 2d Sess., 9 (1966) (same).

Despite the extensive pedigree of this virtually universally accepted rule, the District Court decided in this case to reverse the burden of proof and force AARC

to "disprove[] that the materials sought . . . have not been improperly withheld."[4]
*Tax Analysts*, 492 U.S. at 142 n.3. Despite the fact that, as AARC pointed out,
there was *no* evidence in the record that supported FBI's claim that its assessed
fees were reasonable, the District Court insisted that the requester must first file a
motion for summary judgment arguing that the fees were *unreasonable,* placing
AARC at the distinct disadvantage of having to guess at the FBI's justifications in
its initial brief, while the FBI would be free to tailor its declaration to the
arguments made by Plaintiff and not run the risk of revealing any information that
might detract from its case. This clearly erroneous decision set the stage for the
entire course of this case and led inexorably to this appeal.

     To clarify, in this Motion AARC is not addressing the more nuanced
question of which party should be required to go first in a dispute over a public
interest fee waiver. AARC continues to maintain that, in such an instance, FBI
would still be required to either file the first motion or otherwise provide AARC
with "the record before the agency," 5 U.S.C. § 552(a)(4)(A)(vii), but it recognizes
that this position lies in tension with this Court's jurisprudence that "the burden for
satisfying the public interest standard remains on the requester." *Larson v. CIA*,
843 F.2d 1481, 1483 (D.C. Cir. 1988). However, as AARC informed the District

---

[4] It is well-established that an agency's decision to withhold records unless the
requester pays a fee is subject to judicial review as a withholding decision.

Court several times, its objection was not primarily focused on the fee waiver decision, and its chief complaint was that FBI was charging fees which were not "limited to reasonable standard charges" in violation of 5 U.S.C. § 552(a)(4)(A)(ii). Accordingly, even if FBI were correct about the public interest fee waiver issue, that would have no bearing on its duty to prove that it properly assessed reasonable fees in the first place, and the District Court clearly erred by forcing AARC to file a motion for partial summary judgment before it would adjudicate whether FBI was properly requiring AARC to pay the monthly fees in question.

In anticipation of the fact that the Court may question the importance of this decision, vacating and reversing it would have a hydraulic effect on most of the challenged decisions in this case. Reversing this decision would mean that AARC likely would have never needed to request the extensions which so bothered the District Court. It would mean that AARC's motion, once it was filed, would never have been denied due to delays, which in turn would mean that when FBI *did* ultimately file a motion for partial summary judgment on the fee issue and AARC opposed it, the District Court would have been required to actually adjudicate the motion on the merits instead of relying on the fact that it had already dismissed AARC's motion on the reasonableness of the fees and concluding that the fact that

"the Center has not paid the duplication fees for the last four productions" was dispositive. Dkt. #52 at 2-3.

In short, if the Court finds that the District Court abused its discretion in making AARC go first, it should accordingly vacate every fee-related decision which followed and remand the case to the District Court with instructions to adjudicate FBI's 18 April 2022 motion *on the merits* and explicitly consider AARC's arguments regarding the reasonableness of FBI's assessed fees and its entitlement to a public interest fee waiver.

## II.    THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING AARC'S 16 MARCH 2020 EXTENSION REQUEST

Simply put, the District Court abused its discretion by unreasonably minimizing the effect the coronavirus emergency and the related shutdowns had on AARC's undersigned counsel, claiming that denial of a unopposed motion was appropriate because "Plaintiff has known of its summary judgment briefing deadline since August 6, 2019" and holding that "[n]otwithstanding the national emergency surrounding the coronavirus, the Plaintiff has not shown good cause why its briefing deadline should be extended yet again." (Dkt. #1985367 at 3.) On the first point, the fact that AARC had known about the deadline since August was irrelevant since the District Court had already concluded on 10 September 2019 that AARC's President's heart surgery and resulting inability to do anything in support of AARC's motions was a legitimate reason for the undersigned not to

work on them for that period of time. It would be patently unfair to allow the District Court to expressly endorse a party's reason for not working on a brief for six months and then penalize the party for not working on the brief for six months.

The District Court's second statement, however, underscores the unreasonableness of this decision. The President of the United States declared a state of emergency which led to virtually the entire Executive Branch shutting down and most private businesses closing until further notice. The U.S. House of Representatives passed a bill legally requiring all employers to provide paid sick leave to employees—like the undersigned—who now had to care for children who otherwise would be in child care, and the bill was on track to be signed into law within days. The Chief Judge of the District Court expressly acknowledged all of these factors and restricted court operations to a small fraction of the normal workload. And all of this happened as the undersigned was preparing to go on paternity leave after the birth of his second child. There is no scenario in which a denial of this motion is reasonable.

Viewed with the benefit of hindsight, the District Court's abuse of its discretion is even more apparent when one considers that, while all of these factors allegedly did not constitute good cause, FBI's counsel demonstrated good cause by simply claiming that she "need[ed] additional time to research the issue and allegations in Plaintiff's motions and confer with the supervising attorneys about

potential defenses," that the agency declarant "need[ed] additional time to prepare
and complete the supporting declaration," that FBI "need[ed] additional time to
request, receive, and review the transcript of the Court's" 6 August 2019 ruling,
(which it had known would be relevant since 6 August 2019), that FBI
"request[ed] additional time to prepare an appropriate response to Plaintiff's
motions," and that a senior agency official decided at the last minute to review a
declaration. *See* Dkt. #42 at 2; Dkt. #44 at 2. If these statements—which basically
boil down to "writing briefs takes time"—constituted good cause, it cannot be
argued that AARC's stated reasons, based in a once-in-a-lifetime public health
crisis and official government responses to it—did not.

As with the previous decision, this decision is worth reversing primarily
because of the critical role it played in the development of this case. Without it,
AARC would not have been required to forgo filing its motions in March 2020,
and twenty months would not have passed between the District Court's deadline
and their ultimate filing, which so troubled the District Court. In short, reversing
this decision would have the same general effect as reversing the previous
decision, resulting in the District Court's adjudication of the parties' respective
motions—likely including AARC's motion to compel, although AARC may have
declined to pursue it in June 2020 for the same reason it stated in March 2020—on
the merits, which would negate all of the District Court's subsequent decisions.

III.  **SUMMARY JUDGMENT MOTIONS MUST BE DECIDED ON THE MERITS AND SANCTIONS MUST BE PROPORTIONATE**

All three of the District Court's 2022 decisions were clearly erroneous for variations of the same two basic reasons: (1) the District Court failed to follow this Court's clear precedent requiring summary judgment motions to be decided on the merits; and (2) the sanctions selected by the District Court for perceived violations of its Standing Order were grossly disproportionate to the alleged misconduct.

On the first point, this Court has clearly spoken in controlling precedent, and it should summarily reverse these decisions on this basis alone. In 2016, this Court held that a Local Rule that allowed a judge to treat an unopposed motion for summary judgment as conceded and rule accordingly was fundamentally incompatible with Federal Rules of Civil Procedure 56(a) and 56(e), holding that "a court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment," *Winston & Strawn, LLC v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (quoting *Grimes v. Dist. of Cola.*, 794 F.3d 83, 95 (D.C. Cir. 2015)), and that "judgment is granted only after the District Court satisfies itself that the record and any undisputed material facts justify granting summary judgment." *Id.* A necessary corollary to this rule is that a District Court also cannot *deny* a motion for summary judgment without "determin[ing] for itself whether the record and any undisputed material facts justify granting summary judgment," *id.* All of this is in service of the basic

precept that "our judicial system[] [has a] strong presumption in favor of adjudications on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

When the District Court summarily denied AARC's motion for partial summary judgment solely on the basis of the alleged violations of the Standing Order and AARC's alleged failure to "prosecute its case," Dkt. #47 at 3, it did so without ever determining for itself whether the record and any undisputed material facts justified granting summary judgment. When the District Court relied on that decision and granted FBI's motion for partial summary judgment solely on the basis of the fact that AARC had not paid FBI the fees the District Court had never held to be properly assessed, it did so without ever satisfying itself that the record and any undisputed material facts justified granting summary judgment.[5] When the District Court finally dismissed the case in its entirety solely because AARC had not paid FBI the fees in question, it did so without ever even *reading* the record regarding the adequacy of the searches already performed by FBI, the appropriateness of FBI's determination that part of the 2d Request was not a proper FOIA request, or the validity of FBI's withholdings of information from thousands

---

[5] This decision is especially problematic because the District Court failed to adhere to the axiom that in ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 255 (1986). AARC provided significant evidence which warranted at least a *discussion* by the District Court, and yet the District Court's opinion remained silent on *all* of them.

of pages it had already processed and released. Every one of these decisions is directly precluded by controlling precedent.

Moreover, these decisions ignored the District Court's duty to articulate the reasons for its decisions. "When [this Court] review[s] a district court's decision . . . for an abuse of discretion, it is imperative that a district court articulate its reasons." *McCready v. Nicholson*, 465 F.3d 1, 15 (D.C. Cir. 2006) (cleaned up) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996)). It goes without saying that when a District Court fails to address any of the arguments made by a party, it is not "articulat[ing] its reasons." This is true for every decision at issue in this motion, including the decision to require AARC to file first, the decision to deny AARC's 16 March 2020 extension motion, the decision to deny AARC's motion for partial summary judgment, the decision to deny AARC's motion to compel, and the decisions to grant FBI's final three motions. The one consistent factor in all of these decisions is an absolute failure by the District Court to justify its determinations beyond complaining about alleged minor violations of procedural rules.

On this final point, it is clear that every decision made after August 2019 was a sanction, whether the District Court explicitly stated as much or not. Over the course of this case, the District Court's sanctions became more extreme even though the alleged misconduct remained minor at best, leading to the ultimate

sanction of dismissal. The best example of this trend is the denial of AARC's

motion for partial summary judgment and motion to compel based solely on an

extension request filed for AARC's reply briefs. At best, the District Court would

have been operating within its discretion to deny this motion and disallow the

filing of AARC's reply briefs, at which point it would have still had two motions

and two oppositions to review. It is well-established that a motion and an

opposition provide a court with an adequate basis for adjudicating a motion, even

in the absence of a reply. Instead, the District Court took the extreme step of not

only denying AARC's extension motion, but denying the substantive motions as

well without ever evaluating them on their merits. And it did so *solely as a*

*sanction*.

Generally, the appropriate sanction is governed by the rule violated.

However, "[w]hen rules alone do not provide courts with sufficient authority to

protect their integrity and prevent abuses of judicial process, the inherent power [of

the court] fills the gap." *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d

1469, 1474 (D.C. Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46

(1991). "Because inherent powers are shielded from direct democratic controls,

they must be exercised with restraint and discretion." *Id.* at 1475 (quoting

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Thus, utilization of

inherent powers must be restrained "[b]ecause of their very potency." *Id.* at 1475

(quoting *Chambers*, 501 U.S. at 44). For this reason, "the overriding purpose of the inherent power is 'to achieve the orderly and expeditious disposition of cases.'" *Id.* at 1475 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631 (1962)).

Given the potential severity of the court's inherent powers when issuing fundamentally punitive sanctions, such exercise requires clear and convincing proof the court's order has been violated in bad faith. *Id.* at 1476-1477. Naturally flowing through this examination "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 1478 (quoting *Chambers*, 50 U.S. at 44-45). "[D]ismissal is a 'drastic step, normally to be taken only after unfruitful resort to lesser sanctions.'" *Ripalda v. American Ops. Corp.*, 977 F.2d 1464, 1466 (D.C. Cir. 1992) (quoting *Jackson v. Wash. Monthly Co.*, 569 F.2d 119, 123 (D.C. Cir. 1977)). This act of properly and methodically calibrating the scales ensures all lesser sanctions have been thoroughly addressed so as to impose the most effective penalty while still balancing the policy favoring adjudication on the merits. *Shepherd*, 62 F.3d at 1478-1479.

Simply put, the District Court did not do that. Its first sanction for requesting too many extensions and allegedly not including specific words in those requests was to dismiss two meritorious motions which had already been briefed for the most part. Its second sanction was ordering AARC to pay fees that it had not yet found to be legally assessed. Its third sanction was to effectively dismiss the entire

case in a two-step process because AARC refused to pay fees that the Court had

*still* not found to be legally assessed. None of these are proportional responses to

the alleged misconduct, and they all demonstrate that most of the decisions made

in this case were the product of a district judge who blamed the requester for the

slow progress of a FOIA case caused by the agencies' intransigence.

## CONCLUSION

For the foregoing reasons, the Court should summarily reverse the District

Court's orders with respect to the issues described herein.

Date: April 7, 2023

Respectfully submitted,


 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing filing contains 6,508 words, and was prepared in 14-point Times New Roman font using Microsoft Word 2016.

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.