NO ORAL ARGUMENT SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 23-5004
(Civ. A. No. 18-1868)

———————————————

ASSASSINATION ARCHIVES AND RESEARCH CENTER,           Appellant,

v.

DEPARTMENT OF JUSTICE,                                Appellee.

———————————————

**CORRECTED BRIEF FOR APPELLEE**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

STEPHANIE R. JOHNSON
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
(202) 252-7874
stephanie.johnson5@usdoj.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Appellee files this certificate as to parties, rulings, and related cases.

### Parties and *Amici*

Appellant is Assassination Archives and Research Center, which was the plaintiff in the District Court. Appellee is the United States Department of Justice, which was the defendant in the District Court.

There were no *amici* or intervenors in the District Court, and there have been no *amici* or intervenors in this Court to date.

### Rulings Under Review

At issue in this appeal are the Honorable Trevor N. McFadden's (a) August 6, 2019 Minute Order setting a briefing schedule and denying plaintiff's motion to compel the government to move for an *Open America* stay; (b) March 16, 2020 Minute Order denying plaintiff's motion for an extension; (c) February 14, 2022 Order denying plaintiff's motions for partial summary judgment, to compel, and for an extension of time to file reply; (d) September 30, 2022 Order granting defendant's motion for partial summary judgment; and (e) November 8, 2022 Order granting defendant's motion to dismiss the action as a sanction for nonpayment of FOIA reproduction fees as ordered by the district court.

**Related Cases**

This case has not previously been before this Court.  Undersigned counsel is not currently aware of any pending related cases.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES..................................................................1

PERTINENT STATUTE .............................................................................2

COUNTERSTATEMENT OF THE CASE....................................................3

   I.  FOIA AND FEE WAIVER REQUESTS AND FBI'S PROCESSING ..........3

      A.  Request Number 1139342-001 (previously Request Number 1139342-000). ..............................................................................................3

      B.  Request Numbers 1386188-000 and 1386440-000...................6

   II. PROCEDURAL BACKGROUND ................................................7

SUMMARY OF ARGUMENT ..................................................................11

STANDARD OF REVIEW .......................................................................13

ARGUMENT .............................................................................................13

   I.  ASSASSINATION ARCHIVES WAIVED ANY CHALLENGE TO DENIAL OF ITS PUBLIC INTEREST FEE WAIVER REQUEST, AND THE FBI PROPERLY DENIED THE REQUEST IN ANY EVENT.......................13

      A.  Assassination Archives Waived Its Challenge to the Fee Waiver Denial by Failing to Properly Raise It in the District Court.............................13

      B.  The FBI's Denial of Assassination Archives' Fee Waiver Request Was Correct.................................................................................15

   II. THE DUPLICATION FEE CHARGED BY THE FBI IS RESONABLE....18

   III. THE DISTRICT COURT PROPERLY DENIED ASSASSINATION ARCHIVES PARTIAL MOTION FOR SUMMARY JUDGMENT, REASONABLY DETERMINED NOT TO ADDRESS THE FEE ISSUE, AND DISMISSED THE CASE. ..................................................................22

   IV. THE DISTRICT COURT ACTED COMFORTABLY WITHIN ITS DISCRETION IN MANAGING THIS MATTER.............................................29

CONCLUSION ........................................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Brown v. U.S. Patent & Trademark Off.*,
    226 F. App'x 866 (11th Cir. 2007) ................................................................. 17

*Byrd v. EPA*,
    174 F.3d 239 (D.C. Cir. 1999) ..................................................................... 21

*Cause of Action v. FTC*,
    799 F.3d 1108 (D.C. Cir. 2015) ......................................................... 13, 16, 19

*Ciralsky v. CIA*,
    355 F.3d 661 (D.C. Cir. 2004) ................................................................. 27, 28

*Clemente v. FBI*,
    867 F.3d 111 (D.C. Cir. 2017) ................................................................. 13, 27

*Cohen v. Bd. of Trs. of Univ. of D.C.*,
    819 F.3d 476 (D.C. Cir. 2016) ............................................................. 13, 30–31

*District of Columbia v. Air Fla., Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984) ...................................................................... 14

*Emile v. Santa*,
    895 F.2d 1468 (D.C. Cir. 1990) ...................................................................... 28

*Forest Guardians v. Dep't of Interior*,
    416 F.3d 1173 (10th Cir. 2005) ...................................................................... 17

*Fox v. Am. Airlines, Inc.*,
    389 F.3d 1291 (D.C. Cir. 2004) ......................................................... 13, 14, 27

*Grimes v. District of Columbia*,
    794 F.3d 83 (D.C. Cir. 2015) ................................................................... 27, 29

*Jud. Watch, Inc. v. Rossotti*,
    326 F.3d 1309 (D.C. Cir. 2003) ......................................................... 13, 15, 17

*King v. Department of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ....................................................................... 19

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ....................................................................................... 32

*Larson v. CIA*,
   843 F.2d 1481 (D.C. Cir. 1988) ................................................. 14, 15, 16, 17, 30

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) ........................................................................ 27

*Manivannan v. Dept of Energy*,
   843 F. App'x 481 (4th Cir. 2021) ................................................... 25

*Morrissey v. Mayorkas*,
   17 F.4th 1150 (D.C. Cir. 2021) ................................................. 26, 27

*National Security Counselors v. CIA*,
   960 F. Supp. 2d 101 (D.D.C. 2013) ............................................... 22

*National Security Counselors v. Department of Justice*,
   305 F. Supp. 3d 176 (D.D.C. 2018) ......................................... 19, 20

*National Security Counselors. v. Department of Justice*,
   848 F.3d 467 (D.C. Cir. 2017) ....................................... 1, 15, 16, 17, 20, 22, 23

*National Security Counselors. v. Department of Justice*,
   No. 18-5171, 2018 WL 6167377 (D.C. Cir. Nov. 1, 2018) ...... 1, 11, 20, 21, 3, 4

*Nat'l Treasury Emps. Union v. Griffin*,
   811 F.2d 644 (D.C. Cir. 1987) ................................................. 15, 19, 30

*Open America v. Watergate Special Prosecution Force*,
   547 F.2d 605 (D.C. Cir. 1976) ....................................................... 32

*Otero v. Dep't of Just.*,
   No. 18-5080, 2019 WL 4565497 (D.C. Cir. Sept. 4, 2019) ............... 25

*Pollack v. Dep't of Just.*,
   49 F.3d 115 (4th Cir.) ........................................................... 18, 25, 29

*Public Citizen Health Research Group v. FDA*,
   704 F.2d 1280 (D.C. Cir. 1983) ...................................................... 19

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
   958 F.2d 416 (D.C. Cir. 1992) ........................................................ 28

*Salazar ex rel. Salazar v. District of Columbia*,
   602 F.3d 431 (D.C. Cir. 2010) .................................................. 14, 17

*Winston & Strawn, LLC v. McLean*,
   843 F.3d 503 (D.C. Cir. 2016) ........................................................ 23

*Zhandov v. Dep't of State*,
   22 Fed. App'x 12 (D.C. Cir. 2001) ........................................... 14, 28

**Statutes**

5 U.S.C. § 552 ....................................................................... 1, 18, 19, 28

28 C.F.R. § 16.10 ...................................................... 5, 6, 7, 8, 9, 16, 18

28 C.F.R. § 16.11 ............................................................................... 25

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 1331 .................................................................................. 1

**Rules**

Fed. R. Civ. P. 41 ......................................................... 1, 10, 27, 28

Fed. R. Civ. P. 56 ...................................................................... 29

## GLOSSARY

| | |
|---|---|
| Assassination Archives | Assassination Archives and Research Center |
| Aplt. Br. | Brief for the Appellant |
| Civil Rule | Federal Rule of Civil Procedure |
| CD | compact disc |
| FBI | Federal Bureau of Investigation |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |

## STATEMENT OF JURISDICTION

The complaint invoked the District Court's jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. JA12. The District Court granted defendant's motion to dismiss pursuant to Civil Rule 41(b) on November 8, 2022. JA333–34. Plaintiff timely filed a notice of appeal on January 7, 2023. JA335.

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In the opinion of the Department of Justice, the following issues are presented:

1.    Whether Assassination Archives waived any challenges to the public interest fee waiver denial and even if not, whether the FBI correctly denied Assassination Archives' fee waiver request.

2.    Whether the FBI's standard duplication rate ($15 dollars per 500-page CD) is reasonable because that rate is not more than the FBI's direct costs as allowed by the statute, and whether this Court's decision in *National Security Counselors. v. Department of Justice*, 848 F.3d 467, 471–72 (D.C. Cir. 2017), and *National Security Counselors. v. Department of Justice*, No. 18-5171, 2018 WL 6167377, at *1 (D.C. Cir. Nov. 1, 2018), are controlling on this issue.

3.    Whether the District Court correctly granted summary judgment in favor of the FBI considering Assassination Archives' undisputed, unpaid duplication fee balance of $52.50 for productions Assassination Archives had already received

after apparently revoking its agreement to pay these fees during litigation and without notice to the FBI or the District Court.

4.     Whether the District Court's dismissal for violating a clear order requiring Assassination Archives to pay the outstanding reproduction fees allowed under the statute was within the District Court's discretion.

5.     Whether the District Court's case management was within its discretion when it ordered Assassination Archives to move for summary judgment on the fee issues, denied its belated extension motion due to failure to comply with several warnings and court orders, and determined an *Open America* stay was unwarranted.

## **PERTINENT STATUTE**

The relevant statutory provisions are set forth in the addendum to Assassination Archives' opening brief.

## COUNTERSTATEMENT OF THE CASE

### I.    FOIA AND FEE WAIVER REQUESTS AND FBI'S PROCESSING

#### A.    Request Number 1139342-001 (previously Request Number 1139342-000).

Assassination Archives submitted a FOIA request dated October 7, 2009, to the FBI seeking copies of seven boxes of indices of pre-1960 electronic surveillances as identified in *Lardner v. FBI*, Civ. A. No. 03-0874 (D.D.C. filed Apr. 11, 2003), and the FBI assigned this request No. 1139342-000.  JA188 (at 3 n.1); *see also* JA209–10.  Assassination Archives requested to be categorized as a representative of the news media for fee purposes and sought a public interest fee waiver.  *Id.*

On November 5, 2009, the FBI advised Assassination Archives that its request for a public interest fee waiver was denied because it had failed to provide sufficient information to qualify.  JA188 (at 3 n.1).  Notwithstanding being informed of its appellate rights, Assassination Archives did not appeal the FBI's determinations, as it conceded in its complaint.  JA188 (n.1); *see also* JA14 (¶ 14).

By letter dated November 13, 2009, the FBI advised Assassination Archives that it had located approximately 18,000 pages of potentially responsive documents, which the agency planned to process and release the records  on CDs containing 500 pages each.  JA188 (n.1); *see also* JA218.  FBI requested that Assassination Archives agree in writing within sixty days to pay $15.00 per 500-page CD and notified Assassination Archives that it would cease processing the request if no response was

received within in sixty days.  JA188 (n.1); *see also* JA218.  On February 9, 2011, the FBI contacted Assassination Archives again, advising that if all 18,000 pages were processed, Assassination Archives would owe $540.00 (thirty-six CDs at $15.00 each) and if the FBI did not receive written confirmation of Assassination Archives' willingness to pay, or if Assassination Archives did not contact the FBI to reduce the scope of the request, it would close the request within thirty days.  JA188 (at 3 n.1); *see also* JA14 (¶ 12); JA220.

No response was received, and the FBI closed the request on March 22, 2011.  JA188 (at 3 n.1); *id.* (at 3-4); *see also* JA14 (¶ 13).  Assassination Archives again did not appeal the FBI's final determination, as it conceded in its Complaint.  JA188 (at 3 n.1); *see also* JA14 (¶ 14); A319 (Nos. 6, 7).

On September 7, 2012, Assassination Archives re-submitted a FOIA request to the FBI relating to the subject matter previously sought three years earlier in Request No. 1139342-000 (i.e., copies of the indices of pre-1960 electronic surveillance identified in *Lardner*).  JA188–89  (¶¶ 5, 6).  Assassination Archives also requested a waiver of all search and copying fees due to its purported news media status and committing to pay up to $200 in copying fees pending the FBI's determination on whether to grant or deny its public interest fee waiver.  JA189 (¶ 6).

On September 13, 2018, after Assassination Archives filed this lawsuit, the FBI advised Assassination Archives by letter that it had no record of receiving the

alleged September 7, 2012, resubmitted FOIA request,[1] renumbered the 2009 request as a new request No. 1139342-001, again denied the Assassination Archives' request for a public interest fee waiver and advised that the FBI would charge Assassination Archives applicable duplication fees.  *See* JA190 (¶ 7); *see also* JA218; JA 226–27; JA299 (¶ 7).

From February 4, 2019, through December 30, 2021, the FBI made, and Assassination Archives accepted, twenty-three interim productions of records in response to Assassination Archives' FOIA request.  JA194 (¶ 17).  Assassination Archives was required by a Department of Justice regulation (28 C.F.R. § 16.10) to pay a monthly duplication fee of $15 and would receive 500 pages per month on a CD.  JA188 (at 3 n.1); *see also* JA14 (¶ 12); JA220.  In each interim response, the FBI advised Assassination Archives of the exemptions claimed for information withheld as well as the duplication costs associated with each release.  JA194–96 (¶ 17).  Assassination Archives paid the assessed fees for the first nineteen interim productions, through March 30, 2021.  *Id.*; *see also* JA299 (¶ 7).

---

[1]     The purported September 2012 FOIA request was the same request submitted in 2009.  *Compare* JA209–10 (2009 FOIA request) *with* JA223–24 (purported 2012 FOIA request).

By letter dated January 31, 2022, to the FBI notified Assassination Archives that there was an outstanding balance due of $52.50[2] for the duplication fees associated with the twentieth, twenty-first, twenty-second, and twenty-third releases and that failure to pay the outstanding fees within 30 days would result in the closure of Assassination Archives' requests.  JA299 (¶ 7).  Assassination Archives did not pay the outstanding balance.  JA332.

### B.    Request Numbers 1386188-000 and 1386440-000[3]

Assassination Archives had also submitted to the FBI two other FOIA requests, both dated October 2, 2017.  JA191–92 (¶¶ 8, 10).  The first sought records pertaining to "all information about the processing of their previous []Request No. 1139342-000,"  JA191 (¶ 8), and the FBI assigned this Request No 1386188-000, *id.* (¶ 9).  The second FOIA request sought records pertaining to "all information about the aforementioned sequence of events and all information about any actions FBI took in response to Mr. Lesar's 10 April 2013 letter," JA192 (¶ 10),

---

[2]    Because some of the prior releases were less than 500 pages on a CD, the FBI adjusted the fees downward.  When it produced less than 500 pages on a  CD, the FBI only charged Assassination Archives half of the amount ($7.50), which is why the outstanding balance is not evenly divisible by $15.  *See* JA195–96 (chart summarizing FBI's productions and applicable charges).

[3]    These FOIA Requests relate to Assassination Archives' Second and Third causes of action identified in its complaint, JA15–17, and are not at issue in this appeal.

and the FBI assigned this request No. 1386440-000, *id.* (¶ 12).  The FBI released all responsive non-exempt records at no cost on November 9, 2018.

## II.    PROCEDURAL BACKGROUND

Assassination Archives initiated this action on August 8, 2018, seeking a response to three FOIA requests relating to: (1) records identified in *Lardner*, Civ. A. No. 03-0874, (2) information about the processing of their previous Request No. 1139342-000,  and (3) information about the sequence of events and any actions FBI took in response to their April 10, 2013 letter.  *See generally* JA12.

Thereafter, the District Court issued a standing order establishing procedures for cases before the Honorable Trevor N. McFadden.  JA21.  The Standing Order stated, in relevant part, that "[m]otions for extensions . . . are strongly discouraged and will be granted only in truly exceptional or compelling circumstances and parties should not expect the Court to grant extensions . . . . Motions for extensions of time *must be filed at least four business days prior* to the first affected deadline[.]"  JA21 (emphasis in original).

The parties filed a joint status report disagreeing on four main issues: (1) the order of briefing, (2) the required duplication costs associated with each release, (3) the FBI's processing rate, and (4) Assassination Archives' insistence that the District Court compel the FBI to file a motion for an *Open America* stay.  JA32–36. The parties then appeared for a status hearing and after the hearing and considering

7

the parties' positions, the District Court determined that because Assassination Archives wanted documents but did not want to pay, it would need to move first and explain its position. JA45–47. The District Court explained that the issues regarding the appropriateness and reasonableness of the FBI's fees were not typical FOIA issues (such as exemptions or the adequacy of a search) that would require the FBI to move first, but instead were about how the matter should proceed in light of Assassination Archives' refusal to pay the assessed fees. *Id.* Based on the parties' preferred deadlines, the District Court ordered a briefing schedule with Assassination Archives' opening brief due on September 13, 2019. JA47–48; *see also* JA5 (Aug. 6, 2019, Min. Entry). The District Court also denied Assassination Archives' oral request for an order compelling the FBI to move for an *Open America* stay. JA53. The District Court stated that an *Open America* stay appeared unnecessary because records productions were ongoing. JA52.

A series of delays by Assassination Archives followed. Assassination Archives moved for its first extension and the District Court granted it, staying briefing until March 9, 2020, and ordering Assassination Archives to file its brief the day after the lifting of the stay: March 10. JA6 (Sept. 10, 2019, Min. Order). The day before its motion was due, Assassination Archives moved for another extension. JA58. Despite violating the standing order's requirement of four-business-days' advance notice, the District Court granted in part and denied in part

8

Assassination Archives' motion, extending its deadline to March 31, 2020.  JA6 (Mar. 11, 2020, Min. Order).    The District Court also specifically warned Assassination Archives that any further requests for extension would be disfavored. *Id.*  Nevertheless, Assassination Archives moved for a third extension, which the District Court denied for failure to show good cause considering the six-month stay and prior extension.  JA6 (Mar. 16, 2020, Min. Order).  On the day its motion was due, Assassination Archives notified the District Court that it could not meet the deadline and requested to vacate the briefing schedule.  JA63–66.

Thereafter, Assassination Archives resumed paying the duplication fees, and the FBI continued to process and release productions until Assassination Archives again stopped paying.  JA194–97 (¶¶ 17–18); *see also* JA299 (¶ 7). The parties thereafter appeared for another status conference, and the court entered a briefing schedule based on dates proposed by the parties.  JA106–08, 10–11.  Assassination Archives was ordered to file its opening brief by November 12, 2021.  JA108, 110.

Assassination Archives, however, again moved for an extension the day before its motion was due.  JA113–14.  Despite again violating the standing order, the District Court granted Assassination Archives' motion and extended all deadlines. JA9 (Nov. 11, 2021, Min. Order).  Assassination Archives eventually filed its partial motion for summary judgment only on the grounds that the FBI's duplication fees were unreasonable and moved to compel the FBI to seek an *Open*

*America* stay.  JA115–124, 160–167.  The FBI opposed these motions.  R.45.  On the day its reply was due, Assassination Archives again moved for an extension. JA270.  The District Court denied Assassination Archives' motion for an extension of time along with its motions for partial summary judgment and to compel, and it ordered Assassination Archives to pay the outstanding fee balance to the FBI. JA272–75.  The District Court found that Assassination Archives failed to prosecute its case, repeatedly violated the District Court's standing order, and ignored the District Court's warnings.  JA274.

In contravention of the District Court's order, Assassination Archives failed to pay the outstanding fee balance. The FBI therefore moved for partial summary judgment on the grounds that (1) Assassination Archives' failure to pay the fees permitted the FBI to stop processing records and (2) the FBI's fees were reasonable. JA276; *see also* JA278–96.  Assassination Archives opposed.  JA306–318.  The District Court granted the motion.  JA322–24.  It found there was no genuine dispute that Assassination Archives failed to pay the duplication fee, JA323–24, and ordered Assassination Archives to pay the outstanding duplication fee.  JA324.

Assassination Archives again refused compliance with the court's order to pay, and the FBI moved to dismiss under Civil Rule 41(b).  JA325–32. Assassination Archives did not respond.  The District Court granted the FBI's

unopposed motion to dismiss for Assassination Archives' failure to comply with the District Court's order to pay the outstanding duplication fee balance.  JA333.

This appeal followed.

## SUMMARY OF ARGUMENT

This appeal is about (1) Assassination Archives' refusal to pay the outstanding reasonable duplication fees allowed by FOIA and required by the District Court's orders, and (2) the District Court's discretion to manage its docket and proceedings.

Assassination Archives requested a public interest fee waiver; however, the FBI denied the request because Assassination Archives failed to demonstrate that the information requested would be published with a purpose towards dissemination to the general public and that the information was in the public interest and likely to contribute "significantly" to public understanding of the operations and activities of the government. Thus, absent a fee waiver, if Assassination Archives wanted the records, it was required to pay the reasonably assessed duplication fees.

The FBI charged Assassination Archives a standard duplication rate of $15 per 500-page CD, which is reasonable because that rate is not more than the FBI's direct costs.  Also, the rate is the same amount this Court has previously found reasonable because the rate does not exceed the FBI's direct costs. *See Nat'l Sec. Couns*, 2018 WL 6167377, at *1 .  Assassination Archives paid the assessed fees for the first nineteen interim productions beginning on February 4, 2019, continuing

11

through March 30, 2021, for Request No. 1139342-001 (previously identified as Request No. 1139342-000), and then suddenly stopped paying without explanation or notice.  Unaware of any change notwithstanding active litigation and counsel representing all parties, the FBI made four additional releases and advised Assassination Archives that there was an outstanding balance due of $52.50 associated with the twentieth, twenty-first, twenty-second, and twenty-third releases. The FBI also indicated that failure to pay within thirty days would result in the cessation of processing Assassination Archives' FOIA requests.

After Assassination Archives refused to pay, the FBI asked the District Court to enforce the fee requirement or terminate the FBI's obligation to process additional records.  After briefing, the District Court granted summary judgment in favor of the FBI because there was no genuine issue of dispute that Assassination Archives had received four productions and failed to pay for them without excuse.  The District Court also acted comfortably within its discretion in dismissing this matter in light Assassination Archives' refusal to pay the outstanding balance.

Further Assassination Archives' contentions regarding the District Court's managing of this matter, including scheduling, rest on  inaccurate characterizations of the record and are otherwise unavailing.

The Court should affirm the decisions and judgment of the District Court.

12

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's grant of summary judgment. *Cause of Action v. FTC*, 799 F.3d 1108, 1113 (D.C. Cir. 2015). If administratively exhausted, the District Court and this Court may review *de novo* the agency's denial of a fee waiver request, but the review is "limited to the record before the agency." *See Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(4)(A)(vii)). Further, this Court reviews the District Court's decisions relating to enlargements of time, scheduling, and dismissal for failure to comply with a court order and failure to respond to a motion to dismiss for abuse of discretion. *Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 480 (D.C. Cir. 2016); *see also Clemente v. FBI*, 867 F.3d 111, 122 (D.C. Cir. 2017); *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004).

## ARGUMENT

I.  **ASSASSINATION ARCHIVES WAIVED ANY CHALLENGE TO DENIAL OF ITS PUBLIC INTEREST FEE WAIVER REQUEST, AND THE FBI PROPERLY DENIED THE REQUEST IN ANY EVENT.**

A.  **Assassination Archives Waived Its Challenge to the Fee Waiver Denial by Failing to Properly Raise It in the District Court.**

Assassination Archives improperly advances new arguments that were not advanced in the lower court. Specifically, Assassination Archives attempts to establish that it was entitled to a public interest fee waiver and the FBI's denial of its request was improper. *See* Aplt. Br. at 32–39. Although given numerous

13

opportunities (and years) to raise these issues below, Assassination Archives failed to do so. *See generally* JA41–53; JA105–111; JA115–24; JA306–10. More specifically, over four years of litigation and two briefs before the lower court, Assassination Archives never attempted to demonstrate, as it must as the party bearing the burden on the fees issue, that it was entitled to a public interest fee waiver. *Id.* Any argument that it was not required to make such a showing, *see* Aplt. Br. at 20–23, lacks merit. Indeed, the requestor bears the burden of showing that its request meets the applicable criteria. *See Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (initial burden on the requestor and affirming fee waiver denial). As such, Assassination Archives waived all arguments relating to its entitlement to a fee waiver, and the Court should not consider them. *See Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 437 (D.C. Cir. 2010) (citation omitted) ("Generally, an argument not made in the trial court is forfeited and will not be considered absent 'exceptional circumstances.'"); *see also Zhandov v. Dep't of State*, 22 Fed. App'x 12 (D.C. Cir. 2001) (in FOIA case, refusing to consider issue that appellant failed to raise below); *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) (issues and legal theories not asserted at the district court level ordinarily will not be heard on appeal).

Accordingly, this Court should not consider whether Assassination Archives qualified for a public interest fee waiver in this case.

**B.     The FBI's Denial of Assassination Archives' Fee Waiver Request Was Correct.**

Even if Assassination Archives timely raised the fee waiver denial below, Assassination Archives fails to demonstrate that it is entitled to a public interest fee waiver or that the FBI's denial of a waiver was improper.  The information Assassination Archives provided the FBI at the administrative level failed to establish at least one of the necessary criteria for a fee waiver.

While fee-waiver applications are to be "liberally construed" in favor of finding that the requester meets public interest criteria, Assassination Archives still must justify its entitlement to a waiver of fees in "reasonably specific" and "non-conclusory" terms.  *See Nat'l Sec. Couns.*, 848 F.3d at 473; *see also Jud. Watch*, 326 F.3d at 1310; *Larson*, 843 F.2d at 1483.  Assassination Archives, contrary to its contentions (*see* Aplt. Br. At 20–23), bears the burden of showing that it satisfies the public interest criteria, *see, e.g.*, *Larson*, 843 F.2d at 1483, and  this Court's review of a fee waiver denial is "limited [only] to the record before the agency[.]" *Jud. Watch, Inc*., 326 F.3d at 1311 (quoting 5 U.S.C. § 552(a)(4)(A)(vii)); *see also Nat'l Treasury Emps. Union v. Griffin*, 811 F.2d 644, 648 (D.C. Cir. 1987) (determining that the reasonableness of the agency's refusal depends on the information before it at the time of its decision, and the requestor's failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court).

15

Here, the FBI denied the public interest fee waiver request because Assassination Archives failed to show that the information requested would be published with a purpose towards dissemination to the general public and that the information was in the public interest and likely to contribute "significantly" to public understanding of the operations and activities of the government. *See* 28 C.F.R. § 16.10(k)(1); *id.* § 16.10(k)(2)(ii); *see also* JA188–89 (at 3–4, ¶ 5 n.1); *id.* (at 4–5, ¶¶ 6–7); JA226–27. Although Assassination Archives provided some outdated indication of its professional or personal contacts with news outlets (*see* Aplt. Br. at 34–36; JA223–24), it failed to provide sufficiently specific and nonconclusory statements demonstrating its ability and intention to disseminate the requested information to the public, and that "alone [provides] a sufficient basis for denying the fee waiver request." *Nat'l Sec. Couns.*, 848 F.3d at 474–75; *Cause of Action*, 799 F.3d at 1116; *Larson*, 843 F.2d at 1483; *see also* Aplt. Br. at 34–35; JA209–10; JA 223–24.

Now, for the first time on appeal, Assassination Archives contends that it is entitled to a public interest fee waiver because it is "in the business of storing and disseminating information, [] its officers are recognized as experts in their fields," and the summary of this case and the first release of records are accessible on their website. *See* Aplt. Br. at 36. Assassination Archives further contends that "people with their own well-trafficked website who are cited in as many places as

16

Assassination Archives' officers can be presumed to reach a reasonably broad audience of interested persons." *Id.* at 37. Assassination Archives' assertions fail.

As an initial matter, these arguments should not be considered because they were not a part of the record before the agency or raised in the District Court. *See Jud. Watch*, 326 F.3d at 1311; *Salazar*, 602 F.3d at 43. Further, Assassination Archives fails even in this Court to describe how it intended to publish the raw materials to a reasonably broad audience. While Assassination Archives claims it posted a summary of this matter and the first release on its website (*see* Aplt. Br. at 36–37), it fails to provide any information regarding the size of the audience that visits its website or other information proving that its posting would reach a broad audience. *See, e.g., Nat'l Sec. Couns.*, 848 F.3d at 474 (upholding the fee waiver denial because, among other things, the requestor failed to produce information about the size of its audience or the amount of traffic received by its website); *Brown v. U.S. Patent & Trademark Off.*, 226 F. App'x 866, 868–69 (11th Cir. 2007) (upholding the fee waiver denial, finding that requester's website posting without more was insufficient to establish dissemination requirement); *Larson*, 843 F.2d at 1483 (rejecting fee waiver when requester failed to provide specific information regarding plans for dissemination); *see also Forest Guardians v. Dep't of Interior*, 416 F.3d 1173, 1179 (10th Cir. 2005) (emphasizing that "FOIA fee waivers are limited to disclosures that enlighten more than just the individual requester").

17

At bottom, Assassination Archives failed to present sufficient evidence to the FBI or in the District Court, and still fails to demonstrate that it had the ability to communicate meaningful information derived from the requested records to a broad audience, such that the requested records would contribute to the public's understanding of this subject.  Accordingly, even were the Court to address the fee waiver denial, it should find that the FBI properly denied Assassination Archives request for a public interest fee waiver.

## II.     THE DUPLICATION FEE CHARGED BY THE FBI IS RESONABLE.

Absent a fee waiver, a FOIA requester must pay required fees to obtain responsive records, and FOIA authorizes agencies to "promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests."  5 U.S.C. 552(a)(4)(A)(i).   An agency can assess fees for the search and duplication of documents and can require payment from the requester before processed records are released. *Id.* § 552(a)(4)(A). The Department of Justice has issued regulations governing FOIA fees, which require most requesters to pay "[d]uplication fees.". 28 C.F.R. § 16.10(c)(2).   Absent a waiver, a requestor must pay assessed fees regardless of whether the requestor filed suit before or after receiving a request for payment. *See Pollack v. Dep't of Just.,* 49 F.3d 115, 120 (4th Cir.).

Section 552(a)(4)(A)(ii) provides that agencies' duplication or production fees "shall be limited to reasonable standard charges," and Section 552(a)(4)(A)(iv)

provides that fees "shall provide for the recovery of only the direct costs of" duplication.  *See Nat'l Treasury Emps. Union*, 811 F.2d at 647, 650 (recognizing standard and rejecting challenge to FOIA duplication fees), *superseded by statute on other grounds, Cause of Action*, 799 F.3d at 1117.   In short, FOIA requires an agency to limit its charges to its costs for producing information.  5 U.S.C. § 552(a)(4)(A)(iv).

The FBI did just that when it made its twenty-two interim productions in response to Assassination Archives' request.  JA194 (¶ 17).  In this case, from the time the fees were assessed in 2018 through the last production on December 30, 2021, the $15 fee charged by the FBI was a reasonable duplication fee and less  than the direct cost of running the search and reproducing the records on the CD. Assassination Archives contends that the FBI's fee was unreasonable at the time they were assessed in 2018 and does not reflect "reasonable standard charges" or "direct costs," as required by section 552(a)(4)(A)(ii)(III). [4]  *See* Aplt. Br. at 39–40. This argument is speculative and lacks any merit.  A year prior, in 2017, in *National Security Counselors v. Department of Justice*, 305 F. Supp. 3d 176 (D.D.C. 2018), the FBI provided a detailed in its declaration regarding how the direct cost exceeds

---

[4]     Also, Assassination Archives' reliance on *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280 (D.C. Cir. 1983), and *King v. Department of Justice*, 830 F.2d 210 (D.C. Cir. 1987), is misplaced because neither case involved the assessment of fees, but instead whether documents were properly withheld under a FOIA exemption.

the $15 per CD fee charged to FOIA releases.  And this Court in fact affirmed the reasonableness and summarily  affirmed appropriateness of the FBI's $15 per CD charge for FOIA releases.  *See Nat'l Sec. Couns.*, 848 F.3d at 471–72 (determining that the  FBI's  $15 per 500–page CD did not violate FOIA requirement that it only recover reasonable standard charges);*see also Nat'l Sec. Couns.*, 305 F. Supp. 3d at 181(finding there existed no genuine issue of material fact that the FBI's $15 per CD charge is lawful), *summ. aff'd*, 2018 WL 6167377, at *1 ("The district court did not err . . . by concluding that the undisputed evidence showed that the fee was not excessive.").  Although, the FBI has sought ways to improve efficiency—especially given the sharp rise in FOIA and Privacy Act requests and related litigation—without a commensurate increase in resources, since this Court affirmed the reasonableness and summarily affirmed appropriateness of the FBI's fees, the direct costs involved in preparing a CD for release remain in excess of the $15.00 per CD charge.  *See generally* JA197–207, *see also* JA203 (¶ 34).

The process employed by the FBI is performed by a Government Information Specialist who spends an estimated forty-six minutes actively performing certain necessary tasks involving human analysis and review before releasing a CD to the requester.  *See* JA204 (¶ 36).  The average Government Information Specialist ranges in grade from GS-11 to GS-13, and the hourly salary ranges from $34.98 per hour (GS-11, Step 1) to $64.81 per hour (GS-13, Step 10).  *Id.* (¶ 37).  Based on the

46-minute estimate to process records for release, the minimum operator cost to prepare a 500-page CD is $26.81. *Id.* This exceeds the $15 charged by the FBI for the release of a CD containing approximately 500 pages. Despite the improvements to how the FBI processes records, when pay rates and average time to perform the required steps before releasing a CD are calculated, the direct cost still remains above $15.00 and therefore charging $15 per CD, which is less than the direct cost, is reasonable. JA206 (¶ 39).

Assassination Archives insists that the FBI's direct costs are unreasonable and that the FBI's "unnecessarily complex and redundant 'security review process,'" ignores the statutory restrictions placed on its ability to charge fees under FOIA. *See* Aplt. Br. at 43. Assassination Archives, however, fails to submit any evidence to support the argument that the FBI's direct cost are unreasonable or that the FBI's process is "unnecessarily complex" and "redundant". *Cf. Byrd v. EPA*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999) ("It is well settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact." (alteration in original) (quoting *Exxon Corp. v. Fed. Trade Comm'n*, 663 F.2d 120, 126–27 (D.C. Cir. 1980))). Rather, Assassination Archives relies on a declaration submitted five years before this matter in a different case involving the FBI. *See* Aplt. Br. at 45–47. Assassination Archives reliance on an old declaration is misplaced because the declaration does not reflect the process employed by the FBI in this

matter.[5]  Regardless, as this Court previously determined FOIA's reasonable-charge

mandate does not require an agency to adopt the lowest-cost method of responding

to requests.  *Nat'l Sec. Couns.*, 848 F.3d at 472.  Instead, FOIA merely requires that

production fees be reasonable, standard, and not exceed the agency's direct costs

and, as demonstrated above, the FBI has met this requirement and there is no

evidence to suggest otherwise.

## III. THE DISTRICT COURT PROPERLY DENIED ASSASSINATION ARCHIVES PARTIAL MOTION FOR SUMMARY JUDGMENT, REASONABLY DETERMINED NOT TO ADDRESS THE FEE ISSUE, AND DISMISSED THE CASE.

Absent a few waiver, and because the fees were reasonable, considering the

entire record, the District Court properly denied Assassination Archives' partial

motion for summary, determined that the FBI was entitled to fees it was owed, and

dismissed and closed this case after Assassination Archives refused to pay the

outstanding balance in violation of FOIA and orders.

Assassination Archives insists that the Court improperly denied its partial

motion for summary judgment, and it was not required to pay the outstanding

balance for the productions it had already received because it was entitled to a fee

---

[5]    Also, Assassination Archives reliance on *National Security Counselors v. CIA*, 960 F. Supp. 2d 101 (D.D.C. 2013), is inapposite.  *See* Aplt. Br. at 43.  That case involved two different agencies (i.e., the Central Intelligence Agency and the Department of State) and the processes involved in that case was not employed by the FBI in this matter.

22

waiver and the FBI's duplication fees are not reasonable.  *See* Aplt. Br. at 26–27, 32 n.5.  Assassination Archives is wrong and unsurprisingly cites no legal authority suggesting that, absent a fee waiver, the requestor is entitled to free or reduce-priced productions or does not have to pay for the productions it has already received.

In terms of Assassination Archives' assertions that the District Court improperly denied its partial motion for summary judgment (*see id.* at 26–27) this argument is moot and its reliance on *Winston & Strawn, LLC v. McLean*, 843 F.3d 503 (D.C. Cir. 2016), is misplaced.  Contrary to Assassination Archives' assertions, the District Court's decision is legally sound, notwithstanding this Court's decision in *Winston & Strawn*.  *Winston & Strawn*, 843 F.3d at 505, established that that the District Court cannot merely treat a motion for summary judgment as conceded absent a response.  There is no indication that *Winston & Strawn* applies in a situation in which a non-movant has filed submissions responsive to a motion for summary judgment, which is precisely the case in this matter—the FBI filed a response to Assassination Archives' partial motion for summary judgment.  In denying Assassination Archives' partial motion for summary judgment, the District Court considered the entire record and determined that partial summary judgment was inappropriate and stated on the record the reasons for denying Assassination Archives motion.  *See id.* at 509. Regardless, this issue is moot because after the District Court denied Assassination Archives' partial motion for summary

Assassination Archives raised the same arguments in its opposition to the FBI's partial motion for summary judgment (*compare* JA115–124 *with* JA310–317).[6]

Absent a fee waiver, and after the District Court denied Assassination Archives' partial motion for summary judgment, Assassination Archives was required to pay the assessed fees pursuant to FOIA and as ordered by the District Court.  It is undisputed that Assassination Archives did not have a fee waiver,  the FBI assessed and informed Assassination Archives that it was required to pay a duplication fee of $15 per 500-page CD, Assassination Archives paid the assessed fees only for the first nineteen interim productions beginning on February 4, 2019, and continuing through March 30, 2021, and Assassination Archives stopped paying and owed $52.50 for four productions it already received.  *See* JA14 (¶¶ 12–14), JA188 (at 3 n.1); JA189 (¶ 6); JA190 (¶ 7); JA194–96 (¶¶ 17–18); JA218; JA220; JA 226–27; JA299 (¶ 7); JA319 (Nos. 6, 7).  Assassination Archives does not contest that they received the four productions and that it owes an outstanding balance of $52.50.  *See generally* Aplt. Br.  Because the FBI has already processed the request and produced four additional productions, which Assassination Archives received,

---

[6]    Although the District Court denied Assassination Archives' partial motion for summary judgment, Assassination Archives could have renewed that motion (as it did when it renewed its request for an extension in March 2020 (JA61)), moved for reconsideration, or cross-moved for summary judgement when the FBI filed its motion for partial summary judgment.  Assassination Archive chose none of those options.

FBI clearly must be paid the work it has already performed before productions may recommence. *See* 28 C.F.R. § 16.11(i) ("Payment owed for work already completed (i.e., a prepayment before copies are sent to a requester) is not an advance payment.").

This Court and another circuit have recognized that an agency is entitled to payment for work already performed, and a requestor's failure to pay required fees relieves the agency from further processing the request. *See, e.g., Otero v. Dep't of Just.*, No. 18-5080, 2019 WL 4565497, at *1 (D.C. Cir. Sept. 4, 2019) ("As the district court concluded, the FBI properly refused to finish processing [the FOIA request] unless [the requester] paid a $25 fee for the search conducted so far."); *Pollack*, 49 F.3d at 120 (affirming the district court's decision granting the agency summary judgment because the plaintiff refused to pay his outstanding balance for records he received"); *Manivannan v. Dept of Energy*, 843 F. App'x 481, 482 (4th Cir. 2021) (affirming the district court's decision granting the agency summary judgment because the requestor failed to pay fees that the agency was permitted to assess).

Also, the District Court also acted within its prerogative to not to entertain Assassination Archives' belatedly raised arguments about its entitlement to a fee waiver or the reasonableness of the fees. When Assassination Archives decided not to raise the fees issue at the beginning of litigation or by the initial date ordered by

the District Court, the District Court could have treated Assassination Archives'
decision as legal concession, but it was under no obligation to do so. *Cf. Morrissey
v. Mayorkas*, 17 F.4th 1150, 1157 (D.C. Cir. 2021) (determining that abuse of
discretion is a particularly high bar where the district court is simply exercising its
judgment about whether to relieve a party from unexcused failure to comply with
rules), *cert. denied,* 143 S. Ct. 624 (2023).  Assassination Archives failed to proffer
any legitimate reason for not raising the fees issue when it made the most sense to
do so, at the outset of the litigation, or even when the District Court issued a
scheduling order to allow Assassination Archives to brief the issue and explain its
position as to why it wanted documents but did not want to pay.  Rather,
Assassination Archives voluntarily requested that the Court vacate the briefing
schedule on the fee issue and after paying the fees for first nineteen interim
productions, through March 30, 2021, the District Court's refusal to consider the
issue at length essentially recognized a litigation concession by Assassination
Archives' counsel.  The District Court noted that it allowed the Assassination
Archives the opportunity to argue the fee issues, but Assassination Archives lost the
opportunity because it failed to abide by the District Court's Orders despite frequent
reminders (and regardless Assassination Archives only brought claims about the
reasonableness of fees).  JA34 (at n.1).  The District Court further stated that the fee
issues did not "raise[] a genuine issue that would preclude summary judgment as to

the fee nonpayment issue." *Id.*  Because the District Court has the closest feel for the issues and the litigation as it unfolds, this Court should not lightly second-guess its case management, especially because it involves the District Court's management of its proceedings.  *See Grimes v. District of Columbia*, 794 F.3d 83, 90 (D.C. Cir. 2015) ("Typically, a district court enjoys broad discretion in managing its docket and determining the order in which a case should proceed").

Also, based on Assassination Archives' refusal to pay the outstanding balance as ordered by the District Court and required under the FOIA, the District Court acted comfortably within its discretion dismissing this matter.  As this Court has noted, the "[d]istrict courts have inherent power to dismiss a case *sua sponte* for a plaintiff's failure to prosecute or otherwise comply with a court order," and this Court reviews the District Court's exercise of its dismissal authority for abuse of discretion.  *Clemente*, 867 F.3d at 122; *see also Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004); Fed. R. Civ. P. 41(b).  Also, this Court reviews the District Court's decision to dismiss a matter on the basis that the plaintiff failed to respond to motion to dismiss for abuse of discretion.  *Fox*, 389 F.3d at 1294.  The authority to dismiss suits has long been recognized as "necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion" in the courts.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962).

27

Assassination Archives failed to pay the required fee pursuant to 5 U.S.C. § 552(a)(4)(A) and, even after several warnings, violated the Districts Court's February 14, 2022, and September 30, 2022, orders (*see* JA272), which ordered it to pay the outstanding balance of $52.50 for the duplication fees. *See id.*; *see also* JA322. The FBI moved to dismiss due to Assassination Archives' refusal to abide the District Court's orders and pay the outstanding balance. JA325. Assassination Archives did not oppose the FBI's motion and therefore cannot now challenge the basis of the District Court's decision to dismiss this matter and close this matter under Civil Rule 41(b). *See, e.g.*, *Zhandov v. Dep't of State*, 22 F. App'x 12 (D.C. Cir. 2001) (in FOIA case, refusing to consider issue that appellant failed to raise below); *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 (D.C. Cir. 1992) (noting rule that Court will not consider argument that appellant failed to raise below absent exceptional circumstances). Accordingly, the District Court did not abuse its discretion when it dismissed this case due to Assassination Archives' refusal to abide by the District Court's orders and pay the outstanding balance of $52.50. *See Emile v. Santa*, 895 F.2d 1468, 1468 (D.C. Cir. 1990) (affirming the district court's discretionary decision to dismiss a case for noncompliance with the court's order compelling discovery and not requiring the district court to "first resort to a less severe sanction"); *Ciralsky*, 355 F.3d at 669 (affirming dismissal of an action for failure to comply with a Court order).

At bottom, while FOIA is a meaningful tool to provide public access to government records, such access "must be orderly and not so unconstrained as to disrupt the government's daily business." *Pollack*, 49 F.3d at 120 (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994)). Assassination Archives' effort to procure hundreds or perhaps thousands of documents without a fee waiver and paying the cost of recovering and duplicating those documents goes against the requirements of FOIA and the FBI's regulations. *Cf. Pollack*, 49 F.3d at 120.

As such, based on well-settled legal principles, considering Assassination Archives failure to pay the outstanding balance for the productions it had received, the District Court correctly denied Assassination Archives' partial motion for summary judgment, entered summary judgment in favor of the FBI, and dismissed this matter.

## IV.    THE DISTRICT COURT ACTED COMFORTABLY WITHIN ITS DISCRETION IN MANAGING THIS MATTER.

When considering the order of how this matter should procced, the requests for extensions, and the request that FBI be compelled to move for an *Open America* stay, the District Court carefully considered Assassination Archives' arguments (or lack thereof) and managed this case comfortably within its broad discretion. For example, the District Court acted comfortably within its broad discretion when determining how this case should be heard and the order of summary judgment briefing. *See Grimes*, 794 F.3d at 90; Fed. R. Civ. P. 56 advisory committee's notes

29

to 2010 amendment (noting courts "can regulate [the timing of summary judgment motions] to fit the needs of the case"). After carefully considering the parties' positions, contrary to Assassination Archives' assertions (*see* Aplt. Br. at 18–23), the District Court comfortably determined that because issues regarding paying for productions and the reasonableness of the FBI's fees were not typical FOIA issues (such as FOIA exemption withholdings or the adequacy of the search) that required the FBI to move first, but instead were procedural issues in how the matter should proceed in light of Assassination Archives refusal to pay for documents it wanted. JA45–47. The District Court recognized that requiring Assassination Archives to move for summary judgment would be sensible because it bore the burden of proof on its fee-related claims, *see, e.g.*, *Larson*, 843 F.2d at 1483 (burden on the plaintiff); *Nat'l Treasury Emps. Union*, 811 F.2d at 647 (same), a principal that Assassination Archives itself appears to agree with, *see* Aplt. Br. at 18 (stating "[p]arties which do not bear the burden of proof cannot be required to seek summary judgment.").

Similarly, the District Court acted within its broad discretion when it denied Assassination Archives' renewed extension motion, because Assassination Archives failed to demonstrate good cause and disregard the District Court's warning that "any further requests for extension shall be disfavored," *see* JA6 (March 11, 2020, Min. Order). This Court gives "great deference" to a district court's decision granting or denying an enlargement of time. *Cohen*, 819 F.3d at 480 (citing

30

*Yesudian v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (stressing that the court of appeals owes "great deference [to district courts] in what are effectively their case-management decisions" under Civil Rule 6(b)). Prior to filing the March 16, 2020, renewed extension motion, Assassination Archives moved for an extension on March 9, 2020, only one day before its motion was due. JA58.

Despite Assassination Archives having more than six months to prepare its partial motion for summary judgment[7] and disobeying the Court's standing order that required all extension motions to be filed four business days prior to the deadline (JA21), the District Court graciously extended Assassination Archives' deadline to March 31, 2020. JA6 (March 11, 2020, Min. Order). Rather than file its motion for partial summary judgment, Assassination Archives, the day its motion was due, voluntarily requested that the District Court vacate the briefing schedule. JA63. Based on the circumstances, contrary to Assassination Archives' assertions (*see* Aplt. Br. at 23–31), the District Court did not abuse its discretion when it denied Assassination Archives' extension motion.

Lastly, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of

---

[7]      On August 6, 2019, Assassination Archives was placed on notice that it was required to file it motion partial motion, which was originally due on September 19, 2019. JA5 (Aug. 6, 2019, Min. Order).

time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The District Court did not abuse its discretion when it denied Assassination Archives' meritless request that the FBI be compelled to seek an *Open America* stay. Regardless, *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), is distinguishable from this matter. In *Open America*, the requestor's FOIA request was deep in the FBI's then-existing backlog and had not been processed. *Id.* In this matter, the FBI was processing Assassination Archives' FOIA requests and releasing records monthly—beginning on February 4, 2019, and continuing through December 30, 2021, the FBI made twenty-two interim productions.

Accordingly, on this record, the District Court acted comfortably within its discretion in denying relief for each of Assassination Archives' procedural motions and deciding the claims based mainly on the evidence and declarations provided by the agency justifying that production was complete in light of Assassination Archives refusal to pay its outstanding balance of $52.50.

## <u>CONCLUSION</u>

Appellee respectfully requests that the Court affirm.

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

*/s/ Stephanie R. Johnson*
STEPHANIE R. JOHNSON
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7874
stephanie.johnson5@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify on this 20th day of November, 2023, the foregoing Corrected Brief has been served by the Court's CM/ECF system.

*/s/ Stephanie R. Johnson*
STEPHANIE R. JOHNSON
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Corrected Brief complies with the requirements of Appellate Rule 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this corrected brief complies with the type-volume limitation of Appellate Rule 32(a)(7)(B) because it contains 7,928 words, excluding the parts of the brief exempted under Appellate Rule 32(f) and D.C. Cir. Rule 32(e), according to the count of Microsoft Word.

*/s/ Stephanie R. Johnson*
STEPHANIE R. JOHNSON
Assistant United States Attorney