No. 23-5004

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT**

_____

ASSASSINATION ARCHIVES AND RESEARCH CENTER, INC.,

*Plaintiff-Appellant*,

v.

DEPARTMENT OF JUSTICE,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:18-cv-01868 (Trevor N. McFadden, J.)

_____

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**
_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................i

GLOSSARY ................................................................................ii

SUMMARY OF ARGUMENT ....................................................1

ARGUMENT ...............................................................................2

    I.    CLARIFICATION OF CONTEXT............................................2

    II.    AARC IS ENTITLED TO A FEE WAIVER .............................10

    III,    FBI'S FEES WERE NOT REASONABLE ...............................12

    IV.    SUMMARY JUDGMENT AND DISMISSAL WERE INAPPROPRIATE .................................................................15

    V.    THE DISTRICT COURT ABUSED ITS DISCRETION IN SCHEDULING MATTERS.........................................................18

    CONCLUSION ...................................................................20

CERTIFICATE OF SERVICE.....................................................22

CERTIFICATE OF COMPLIANCE ............................................23

# TABLE OF AUTHORITIES

**Cases:**                                                             **Pages**

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) .................................3

*Nat'l Sec. Counselors v. DOJ*, 80 F. Supp. 3d 40 (D.D.C. 2015) ....................13

\**Nat'l Sec. Counselors v. DOJ*, 848 F.3d 467 (D.C. Cir. 2017) .............…12, 13

\**Nat'l Sec. Counselors v. DOJ*, 305 F. Supp. 3d 176 (D.D.C. 2018)..............13

*Nat'l Sec. Counselors v. DOJ*, No. 18-5171, 2018 U.S. App. LEXIS 31112
    (D.C. Cir. Nov. 1, 2018) .............................................................…12, 14

## **<u>GLOSSARY</u>**

| | |
|---|---|
| AARC | Appellant Assassination Archives and Research Center, Inc. |
| FBI | Federal Bureau of Investigation |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |

## SUMMARY OF ARGUMENT

The District Court erred when it ordered the Assassination Archives and Records Center ("AARC") to file the first partial summary judgment motion regarding fee issues, and it erred when it denied AARC's March 2020 extension motion. Reversing either of these decisions would have a hydraulic effect on the rest of the case, leading to all subsequent decisions being reversed and remanded.

The District Court also erred by denying AARC's partial summary judgment motion on the reasonableness of the Federal Bureau of Investigation's ("FBI") fee assessment and AARC's motion to compel FBI to seek an *Open America* stay as a sanction.

The District Court also erred by finding that AARC was required to pay FBI's assessed fees and that FBI was not required to seek an *Open America* stay, to the extent that the District Court made any findings regarding those issues.

When given a chance to refute these arguments, FBI instead primarily attempted to reframe the issues rather than engage in a defense of the District Court's actions. To the extent that FBI does offer arguments in the proper context, it has failed to refute any of AARC's points, and this leaves this Court with several alternative options for holding that the District Court erred and remanding the case to the District Court for proper adjudication on the merits, with or without specific instructions.

1

# ARGUMENT

## I.    CLARIFICATION OF CONTEXT

Unlike many—if not most—Freedom of Information Act ("FOIA") cases which come before this Court, the parties in this case do not agree on the facts, the context, *or* the law. As a result, before engaging in a substantive argument about the merits of this appeal, it is first necessary to identify the misrepresentations—be they accidental or intentional—on which FBI's arguments rely. Only once the Court reaches a conclusion regarding these irreconcilable characterizations will it be able to effectively answer the questions which have been presented to it. Moreover, it should take particular notice of any misrepresentations made by *either* party and consider the degree to which those misrepresentations might indicate a lack of good faith on the part of the offending party. In a case where the Appellee concludes its Summary of Argument section by asserting without elaboration that the Appellant's "contentions regarding the District Court's managing of this matter, including scheduling, rest on inaccurate characterizations of the record" (Corr. Br. for Appellee, Dkt. #2027863, at 12 (filed Nov. 20, 2023) [hereinafter FBI's Br.]), it is only appropriate for the Court to consider if that allegation is made in good faith. AARC stands behind its "characterizations of the record" and respectfully maintains that its position is supported by significantly more evidence than FBI can muster.

2

With that being said, this section will identify these points of contention in the order in which they are mentioned in FBI's Brief, for ease of reference:

- "Whether the District Court's case management was within its discretion when it . . . determined an *Open America* stay was unwarranted"[1] is an issue presented to the Court (*id.* at 2) – Whether an agency has to meet the evidentiary standards for an *Open America* stay is not a matter of discretion and is a question of law subject to *de novo* review. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (questions of law are subject to *de novo* review).

- "The purported September 2012 FOIA request was the same request submitted in 2009. *Compare* JA209-10 (2009 FOIA request) *with* JA 223-24 (purported 2012 FOIA request)" (*id* at 5 n.1) – A comparison of the two requests shows that while there is significant overlap, the second request is significantly broader in scope. To wit, AARC's 2009 request seeks "copies of all these indices," referring to "seven boxes of ELSUR indices of pre-1960 electronic surveillances," J. App'x at 210 [hereinafter JA], while its 2012 request seeks "copies of

---

[1] To be clear, this sentence was phrased inartfully, because the District Court did not hold that an *Open America* stay was unwarranted, which would have been a ruling in AARC's favor; it held that FBI did not have to *request* an *Open America* stay in the first place.

3

all these indices, *whether the relate to pre- or post-1960 surveillances*," referring to the boxes in general, and *also* seeks "all tapes, transcripts, logs and other materials related to said surveillance, including surveillance applications, affidavits, testimony, authorizations and warrants," *id.* at 224 (emphasis added). To the extent that FBI argues that AARC's stated justification for a public interest fee waiver and classification as a representative of the news media is the same in each request, it is not uncommon for such information to be identical when a requester files multiple requests for similar types of information, and that can hardly be considered grounds to call facially different requests "the same."

- Request Numbers 1386188-000 and 1386440-000 "are not at issue in this appeal" (FBI's Br. at 6 n.3) – This case was dismissed in its entirety without FBI ever seeking for summary judgment on Counts 2 and 3, and that very fact is part of the core issue at the heart of this case: whether the District Court erred when it dismissed an entire case as a sanction for not paying fees despite the fact that many aspects of the case had nothing to do with fees. The fact that the parties did not brief Counts 2 and 3 below—as well as numerous other matters— before the case was dismissed *is* the issue, and it is misleading to

maintain that that fact means that those requests "are not at issue in this appeal."

- AARC paid the assessed fees through 30 March 2021 "and then suddenly stopped paying without explanation or notice" (*id*. at 11-12) – The record clearly shows that AARC informed FBI in April 2021 that it had not paid the fees assessed for the January 2021 release because FBI was only processing records at a 50% rate yet charging the same fees, and that this issue was only resolved by a reversal of FBI's position in September 2021, such that no bill was sent to AARC until 30 November 2021, although AARC was made aware of a $7.50 fee on 5 October 2021. *See* JA at 101, 196, 240.[2] Any implication that AARC "suddenly stopped paying" after the 30 March 2021 release— let alone that it was "without explanation or notice"—is frivolous, especially since FBI did not make another release until October 2021, *id*. at 101, 196, which is when "AARC ceased making monthly payments to FBI" (Br. for Appellant, Dkt. #2003882, at 10 (filed June 17. 2023).) Furthermore, to the extent that FBI is alleging that AARC "suddenly stopped paying without explanation or notice" after the 30

---

[2] The 30 November 2021 letter requesting payment was inadvertently omitted from the Joint Appendix but can be found in the record at pages 154-55 of Dkt. #45-1.

5

November 2021 bill, the undersigned unequivocally informed FBI's counsel on 16 December 2021 that AARC would not pay any further fees, which was memorialized in a motion filed by FBI four days later. JA at 169. Moreover, that 30 November 2021 bill was sent one week *after* AARC filed a motion asking the District Court to "enjoin FBI from charging any more fees to AARC for the processing of this request," *id.* at 116, and the District Court even recognized on 13 October 2021 that AARC was "no longer comfortable with how this was going." *Id.* at 108. FBI cannot be heard to complain that it was "[u]naware of any change." (FBI's Br. at 12.)

- "Unaware of any change notwithstanding active litigation and counsel representing all parties, the FBI made four additional releases," referring to the twentieth through the twenty-third releases (*id.*) – While AARC has addressed the allegation that FBI was "unaware" in general terms, this specific claim also needs to be briefly addressed with particularity. The twentieth release was made when AARC did not owe any money and was not accompanied by a bill, JA at 196, the twenty-first release was made when AARC had not yet been assessed a bill for the twentieth release, *id*., and the twenty-second and twenty-third releases were made after the parties had already explicitly

informed the District Court that AARC would not pay any more fees, *id.* at 169.

- "[T]his Court reviews the District Court's decision[] relating to . . . dismissal for . . . failure to respond to a motion to dismiss for abuse of discretion" (FBI's Br. at 13; *see also id.* at 27) – The District Court did not dismiss this case for failure to respond to a motion to dismiss; it *solely* cited Rule 41(b) and claimed that dismissal was appropriate because AARC failed to comply with its order. JA at 333.

- "Assassination Archives attempts to establish that it was entitled to a public interest fee waiver and that the FBI's denial of its request was improper," which was "not advanced in the lower court" (FBI's Br. at 13) – The first argument AARC made in opposition to FBI's motion for partial summary judgment on the basis of its claim that AARC was required to pay the assessed fees was a 2.5-page discussion entitled "FBI Improperly Denied AARC a Public Interest Fee Waiver," JA at 308-10, to which FBI responded in a six-page discussion of its own, *see* Def.'s Reply. Supp. Def.'s Mot. Part. Summ. J., Dkt. #51, at 2-8 (filed June 17, 2022). FBI makes this incontrovertibly false claim in an attempt to imply that because AARC did not *file a separate motion* arguing that it was entitled to a public interest fee waiver, that meant

that it "never attempted to demonstrate" as much (FBI's Br. at 14),
despite the thorough argument—supported by evidence—that it made
in opposition to FBI's motion. But it has never been the case in this
Circuit that a FOIA requester—or practically any civil litigant for that
matter—is absolutely required to file a separate motion for summary
judgment on any issue in addition to opposing a motion for summary
judgment filed by the opposing party.

- The 2017 Hardy Declaration filed by AARC, JA at 128-35, "does not
  reflect the process employed by the FBI in this matter" (FBI's Br. at
  21-22) – This grossly overstates the evidence in the record. FBI has
  only offered evidence that, as of 21 January 2022, certain steps
  described in the 2017 Hardy Declaration were "no longer performed,"
  JA at 183-84, 204, the Integrity system was "no longer in use," *id.* at
  184, 203, and the 2017 Hardy Declaration was "not an accurate
  reflection of the steps employed today," *id*. at 203. FBI offered no
  evidence regarding *when* these changes took place, and the first
  release in this case took place in February 2019, *id.* at 195,
  significantly closer in time to a declaration filed in June 2017 than one
  filed in January 2022.

8

- "Assassination Archives' effort to procure hundreds or perhaps thousands of documents without a fee waiver and paying the cost of recovering and duplicating those documents goes against the requirements of FOIA and the FBI's regulations" (FBI's Br. at 29) – Setting aside the extent to which this statement is a broadside against the entire concept of the news media fee category or an agency being limited to charging reasonable fees, it is important to note that AARC has not, at any point in time, maintained that it is not required to pay the assessed fees if it loses the fee-related arguments in this case. *See*, *e.g.*, JA at 46 ("[W]e've committed that if we are denied the fee waiver and the Court decides that we have to pay fees, that we'll pay the fees."). FBI's attempt to characterize AARC as a requester out to steal thousands of documents without paying legitimately assessed fees for them is disingenuous. AARC, like every other FOIA litigant, is entitled to force the government agency processing its FOIA requests to justify its fee decisions to the satisfaction of a federal court before it can be penalized for not paying the fees in question. FBI and the District Court skipped the most critical steps and jumped from the agency's fee assessment to the District Court's order to pay the assessed fees to the District Court's dismissal of the case for not

obeying the order, all without the District Court ever actually deciding that the fees were properly assessed in the first place.

Having addressed the most glaring misrepresentations in FBI's Brief, AARC will spend the remainder of this Reply briefly addressing the most problematic issues with FBI's arguments, none of which effectively refute any of AARC's contentions, in roughly the order in which they are presented in FBI's Brief.[3]

## II.     AARC IS ENTITLED TO A FEE WAIVER

After the Court dispenses with FBI's meritless waiver argument as described above, two core issues—one evidentiary and one procedural—are all that remain of the argument over AARC's entitlement to a public interest fee waiver. The evidentiary issue is straightforward: judicial review of an agency's determination regarding a public interest fee waiver is limited to the record before the agency, but FBI has not provided any record showing how or why it reached the conclusions that it did. FBI simply argues that AARC did not satisfy the relevant criteria, but beyond a letter stating exactly that, there is no evidence in the record to support the conclusion that FBI considered *any* of AARC's assertions, let alone reached the

---

[3] AARC's decision to follow the course of FBI's Brief should not be interpreted as a concession that FBI has properly framed the issues; it is solely to assist the Court in matching FBI's arguments with AARC's counterarguments. Similarly, AARC has elected not to repeat itself unnecessarily, so if it does not address an argument raised by FBI herein, that is simply an indication that it stands behind the corresponding argument in its Brief.

specific conclusions that it now champions. Without evidence from the administrative record, the Court cannot properly evaluate if the arguments made by FBI now were the reasons it initially reached its decision. For example, while FBI now claims that AARC "provided some outdated indication of its professional or personal contacts with news outlets" (FBI's Br. at 16), there is *no* evidence to support the inference that the recency of the information was ever considered during the administrative process.

Contrariwise, while asking the Court to take its word that it made its initial determination for the reasons it now claims to be controlling, FBI argues that AARC's mere description and characterization of its evidence is beyond the scope of the case because it was offered "for the first time on appeal." (*Id.* at 16-17.) This argument is meritless. A FOIA requester is entitled to summarize and describe its evidence in an appeal without it being rejected because it strayed beyond the exact wording of the record.

On that point, the only potential merit to FBI's argument can be found in the statement that AARC did not mention in the administrative record that "the summary of this case and the first release of records are accessible on their website." (*Id.* at 16.) However, this is an understandable omission, since it would have been physically impossible for AARC to inform FBI in a FOIA request of what it did with the records released in response to *that request*. By definition, any

evidence of what was done with released records would not be part of the administrative record created before those records were released. AARC provides this information to the Court simply to indicate that, to the extent the Court considers such matters, the record reflects that AARC did exactly what it told FBI it would do with the information. As to FBI's final contention that its denial of a fee waiver was appropriate because "website posting without more was insufficient to establish dissemination requirement" (*id.* at 17) and "FOIA fee waivers are limited to disclosures that enlighten more than just the individual requester" (*id.*), it is in effect asking this Court to hold it against AARC that it did not provide FBI evidence of any media coverage which would result from the released records in advance of receiving any of them. This is a burden that FOIA does not impose on a requester.

## III.   FBI'S FEES WERE NOT REASONABLE

FBI's argument that its assessed fees were reasonable relies heavily on the contention that this Court's decisions in two previous cases are controlling on this case. (*Id.* at 1 (citing *National Security Counselors v. DOJ*, 848 F.3d 467 (D.C. Cir. 2017) [hereinafter *NSC I*], and *National Security Counselors v. DOJ*, No. 18-5171, 2018 U.S. App. LEXIS 31112 (D.C. Cir. Nov. 1, 2018) [hereinafter *NSC II*]).) However, those opinions are easily distinguishable from this case, and without their direct application, FBI's argument falls apart.

12

Simply put, *NSC I* was an appeal of a district court decision which had found that FBI's policy of limiting each CD to 500 pages and charging $15/CD was reasonable based on nothing more than FBI's description of how and why the policy was designed and implemented. *See Nat'l Sec. Counselors v. DOJ*, 80 F. Supp. 3d 40, 48-49 (D.D.C. 2015). On appeal, this Court held that the fees assessed pursuant to that policy were reasonable "because the agency ha[d] come forward with a reasonable, non-obstructionist explanation for the interim release policy's 500-page-per-CD limitation." *NSC I* at 472. However, the Court remanded the case because FBI had not shown that the fees assessed did not exceed the direct costs. *Id.* at 473.

On remand, FBI filed the Hardy Declaration on which AARC relies in this case. For the first time ever, FBI offered evidence describing the labyrinthine process that it used to process records for release. In light of this new evidence, which was not available to this Court in *NSC I*, the plaintiff asked the district court to find that FBI's fees were not reasonable. The district court held that it could not do so because it was "prohibited from considering the reasonableness of the FBI's direct costs" by the limited scope of this Court's remand order. *Nat'l Sec. Counselors v. DOJ*, 305 F. Supp. 3d 176, 180 (D.D.C. 2018). In other words, contrary to FBI's simplistic statement that the district court "f[ound] there existed no genuine issue of material fact that the FBI's $15 per CD charge is lawful"

13

(FBI's Br. at 20), it instead held that its review of the "lawfulness" of the charge was limited to whether it exceeded FBI's direct costs.[4]

Accordingly, when that case was appealed again, this Court granted summary affirmance, stating simply that "[t]he district court did not err by declining to expand the proceedings on remand beyond this court's mandate or by concluding that the undisputed evidence showed that the fee was not excessive." *NSC II* at *2. Again, contrary to FBI's selective excerpt from this opinion (FBI's Br. at 20), this Court did *not* affirm the reasonableness of FBI's fees in a vacuum; it affirmed the district court's conclusion that the undisputed evidence showed that the fee *did not exceed the direct costs*, which, according to this Court, was the only question properly before it.

With this context, neither of these decisions is controlling on this case, since this Court has never considered the reasonableness of FBI's $15/CD fee *in light of the process described in the 2017 Hardy Declaration*. This case presents the first instance in which that question is squarely before this Court, and the Court should

---

[4] To be fair, the district court did then state in dictum that it believed the charges to be reasonable, but that was not its holding, and to the extent that it might be considered persuasive authority, AARC respectfully discourages this Court from following it.

14

find that FBI has failed to meet its burden of showing that it properly assessed fees of $15 per CD to AARC at the time it assessed the fees.[5]

## IV.  SUMMARY JUDGMENT AND DISMISSAL WERE INAPPROPRIATE

As discussed extensively above, the District Court erred when it granted summary judgment to FBI on the basis of AARC's refusal to pay fees which were improperly assessed, or at least prior to a court finding on the merits that they were *properly* assessed. However, one point raised by FBI warrants further discussion. FBI states, "Assassination Archives does not contest that they received the four productions and that it owes an outstanding balance of $52.50." (*Id.* at 24.) This is not an entirely accurate statement. As noted above, AARC does not contest that it received the four productions for which it has not paid the assessed fees. AARC similarly does not contest that it owes an outstanding balance of $52.50, *if the Court finds that the assessed fees were reasonable and that AARC was not entitled to a public interest fee waiver.* The italicized part of this statement is the critical distinction which refutes FBI's argument. "FBI clearly must be paid [for] the work it has already performed before productions may recommence" (*id.* at 25) *if the*

---

[5] The scope of this holding would be understandably limited in light of FBI's evidence that the current process is different. It may be that AARC is the only FOIA requester which would be affected by this ruling, but it cannot be denied that a holding that FBI improperly assessed fees against AARC would mandate a reversal of the District Court's dispositive orders, since AARC cannot be penalized for not paying fees that were improperly assessed.

*fees were properly assessed*. "[A] requestor's failure to pay required fees relieves the agency from further processing the request" (*id.*) *if the fees were properly assessed*. This one distinction demonstrates how improper the District Court's rulings were; a court simply cannot adjudicate the propriety of a requester's refusal to pay a fee before adjudicating the propriety of the fee itself.

FBI even tacitly concedes that the District Court refused "to entertain Assassination Archives' belatedly raised arguments about its entitlement to a fee waiver or the reasonableness of the fees." (*Id.*) FBI does not contend that AARC was precluded from raising these arguments because they had already been adjudicated on the merits. It instead argues that AARC was precluded from raising these arguments because *it did not do so sooner*. It also confusingly argues that AARC's agreement to pay fees for part of the case constituted a "litigation concession" (*id.* at 26), even though it never contested that, had AARC paid the fees on time, FBI would eventually have to seek summary judgment on the fee issues at the end of the case, necessarily implying that payment of fees during production is not a concession that the fees were properly assessed as long as an objection is noted (which it was, *see* JA at 64). In short, FBI's attempt to reframe the District Court's grant of summary judgment—and its refusal to consider arguments against it—as a "case management" decision is a transparent ploy to discourage this Court from performing the proper *de novo* review.

16

FBI's final argument on this matter boils down to a procedural question of whether a failure to oppose a motion to dismiss for refusing to follow an improper order means that the dismissal cannot be reversed if this Court finds that the order was improper. This is not the case. AARC openly admits that it refused to pay the fees because they had not been found to be proper on the merits. It could not oppose a motion to dismiss by arguing that it had *not* refused to pay the fees. It had consistently argued that the fees were improper, and it argued in the context of the immediately preceding motion for summary judgment that the District Court had not found the fees to be proper on the merits and that summary judgment for non-payment was premature. It would defy reason for this Court to be able to find that FBI had improperly assessed fees and had improperly denied AARC's request for a fee waiver and yet not be able to reverse the dismissal of the case for refusing to follow an order directing the payment of fees.

Furthermore, to the extent that FBI argues that the District Court had no duty to first try less severe sanctions (FBI's Br. at 28), it should be noted that the dismissal of the entire case was not the first sanction imposed by the District Court. The first sanction was denying two substantive motions based on the untimely filing of a reply brief and violations of an order about the filing of extension motions. JA at 274. At no point did the District Court try less severe sanctions than denying substantive motions, even when it would have been entirely reasonable to

17

simply deny the extension motion and refuse to accept the untimely reply briefs, which would still leave the court with two briefs—one in support and one in opposition—for each motion: enough to allow the District Court to issue rulings on the merits while still sending a warning to the offending party. These sanctions were clear abuses of the District Court's discretion, and everything that proceeded as a result should be reversed.

## V.    THE DISTRICT COURT ABUSED ITS DISCRETION IN SCHEDULING MATTERS

AARC recognizes that this Court typically shows great deference to a District Court's determinations regarding its schedule, but even those determinations are not completely immune from reversal. In this case, the Court is presented with two questions: (1) was the onset of the coronavirus pandemic and the approaching birth of an attorney's child "good cause" (FBI's Br. at 30); and (2) can a district court recognize that an attorney cannot conduct work for a certain period and then penalize that attorney later for not conducting work during that period?

AARC has already conclusively answered the first question in its Brief, and so it will not repeat itself here. The second question is more subtle but redounds equally in AARC's favor. In this case, the undersigned was forced to request—without opposition—a six-month extension in September 2019 because his key source of information—AARC's President—was under doctor's orders not to do

18

any work, including working on this case. JA at 56. This request and the reasoning behind it was endorsed by the District Court. *Id.* at 6. However, when AARC requested another extension in March 2020—also without opposition—due to the aforementioned circumstances, the District Court held it against AARC that the undersigned had "known of its summary judgment briefing deadline since August 6, 2019," *id.*, a claim echoed by FBI in its Brief. (FBI's Br. at 31 (highlighting that "Assassination Archives ha[d] more than six months to prepare its partial motion for summary judgment").) This argument ignores the basic fact that the entire reason for the initial enlargement was because "it would be extraordinarily difficult if not impossible for the undersigned to meaningfully make the relevant arguments without being able to regularly consult with Mr. Lesar, which Mr. Lesar's doctor has prohibited for the foreseeable future." JA at 56. The District Court abused its discretion when it recognized that the undersigned would be functionally unable to work on the motions in question for six months and then denied a further enlargement based on the contention that the undersigned had had six months to work on the motions in question.[6] The fact that FBI did not oppose either extension

---

[6] It is additionally worth noting that when FBI sought an extension in December 2021 based solely on reasons related to routine legal drafting, the District Court granted it and warned that future extension requests would be disfavored, *id.* at 9, 169-70, and that when FBI sought a second extension based only on the reason that "undersigned counsel was informed by agency counsel that her supervisor needs additional time to review the proposed declaration," *id.* at 172, the District Court granted that motion as well while not adopting the proposed deadline for AARC's

request yet now attacks them as "fail[ing] to demonstrate good cause" (FBI's Br. at 30) is further reason to reject FBI's position on this matter.

## **CONCLUSION**

For the foregoing reasons and those set forth in AARC's Brief, the Court should reverse the District Court's orders and remand the case with instructions: (1) to find that AARC is not required to pay any fees for the request at issue in Count 1; (2) to order FBI to return all funds collected thus far with interest; and (3) to order FBI to either formally seek an *Open America* stay or produce all responsive records within six months.

---

next filing. *Id.* at 9. The District Court then denied AARC's extension motion regarding its reply briefs and criticized AARC's but not FBI's extension requests, concluding that "[e]nough is enough." JA at 273-74. AARC maintains that if the onset of the coronavirus pandemic and the closure of most of the country is not good cause for an extension, needing more time to research and draft a brief and have a supervisor review it is not either, and that the overarching message of the District Court's orders was that only the plaintiff's motions will be disfavored, *even when they are unopposed*. Given this apparent discrepancy in treatment, AARC respectfully requests that the Court remand this case to a different district judge.

20

Date: December 9, 2023

Respectfully submitted,


/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of December, 2023, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail to Appellee's counsel of record.

Date: December 9, 2023

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing filing contains 5,015 words and was prepared in 14-point Times New Roman font using Microsoft Word 2016.

<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.